## BLACKMER & POST PIPE COMPANY, Appellant, v. MOBILE & OHIO RAILROAD COMPANY et al., Respondents.

### St. Louis Court of Appeals, May 11, 1909.

1. **COMMON CARRIERS: Pleading: Improper Joinder of Causes of Action.** A petition against a railroad company alleging as a cause of action a breach of a contract to convey the goods of the plaintiff and also a breach of the legal duty of the defendant as a common carrier to convey them safely, except as against the act of God or the public enemy, thus combining in one petition and one count causes of action *ex contractu* and *ex delicto* is bad pleading.

2. ————: ————: **Election of Causes of Action.** A shipper whose goods are damaged while being transported by a common carrier can elect to sue in assumpsit on the contract of affreightment or in tort for breach of the duty imposed on the carrier by law.

3. ————: **Connecting Carrier: Agency: Joint Contract of Carriage.** The lines of the Mobile & Ohio Railroad Company extended from East St. Louis south, connecting with another railroad company for through transportation to New Orleans. The Missouri Pacific railroad company received goods in St. Louis, Missouri, for shipment by the Mobile & Ohio and delivered them to the Terminal Association which in turn delivered them to the Mobile & Ohio in East St. Louis for shipment. The Mobile & Ohio paid the Missouri Pacific Railroad Company and the Terminal Association for such service, took up a receipt given by the former for the goods and issued a bill of lading covering the entire shipment from St. Louis to New Orleans. *Held*, the Missouri Pacific Railroad Company, the Terminal Association and the Mobile & Ohio were not joint contractors for the carriage of the goods either by implication of law or by express agreement, but the two former were agents of the latter.

   *Held, further*, if the receipt given by the Missouri Pacific on receiving the freight could be considered a contract for through carriage it was relinquished by the shipper by the substitution of the contract with the Mobile & Ohio.

4. ————: ————: **Contract for Through Carriage: Limiting Liability.** Notwithstanding the provisions of section 5222, Revised Statutes 1899 (amended laws 1905 page 54), an initial carrier receiving goods for transportation over its own and connecting lines may, for a consideration, restrict liability as insurer

to its own line; but it cannot for any consideration exempt itself from liability for the negligence of a connecting carrier.

5. ——: ——: ——: **Naming Destination.** A railroad company charged a round rate from St. Louis to New Orleans for carriage over its own and connecting lines and issued a bill of lading with the destination left blank in the body of the receipt, but at the foot naming the destination and the consignee at New Orleans, and reciting that the goods were to be carried over forwarding lines, but adding that it agreed to carry the property to destination if on its road, and if not on its road and the company guaranteed through carriage, then it agreed to deliver to such other carrier as the company might select, and did not agree to carry beyond its own line or be responsible under any circumstances beyond its own line, with a footnote to the effect that the fact that the property was marked beyond the company's line would not be understood as an agreement to carry beyond. *Held,* the bill of lading was a contract for through carriage from St. Louis to New Orleans.

6. ——: ——: ——: **Common Law Liability.** At common law a common carrier which receives goods for through transportation over its own and connecting lines is liable for damage occurring anywhere on the route, as an insurer, but may restrict this common law liability for a consideration, such as a reduced rate of freight, (if the shipment occurred before the amendment of the Interstate Commerce Act of 1906) though such restriction cannot apply to damage incurred by negligence in handling.

7. ——: ——: ——: **Joinder of Carriers.** Under the provisions of section 5222, Revised Statutes 1899, as amended by the laws of 1905, where an initial carrier, who had issued a contract for through carriage, was joined with the connecting carrier in an action by the shipper for the negligent damage to the goods covered by the contract of carriage, the plaintiff in order to make out a case would have to prove negligence as the cause of the damage and prove which company was negligent.

8. **PRACTICE: Instruction: Ground Covered.** It is not error to refuse instructions where the same ground is practically covered in other instructions given.

9. **COMMON CARRIERS: Connecting Carriers: Insurer: Instruction.** In an action against original and connecting carriers for damage to freight for which the original carrier had given a contract for through shipment, it was error to instruct the jury that the original carrier was not liable as an insurer for breakage such as was usually incident to the shipment of

such freight, where the evidence was conflicting as to whether a full rate was paid. A clause in the bill of lading providing for immunity from liability for breakage in consideration of reduced freight rate would exonerate the carrier from common law liability provided there was a reduced rate, but if there was no reduced rate the original carrier would be liable for any breakage which occurred unless from the act of God.

10. ———: ———: ———: **Measure of Damages.** In such case where there was a contract for through carriage if the full rate was charged, there would be no consideration for limiting the common law liability and the initial carrier would be liable for the difference between the value of the shipment at destination if the goods were undamaged and the value in the condition they were.

11. ———: ———: **Notice of Claim: Consideration.** There must be a consideration to sustain a stipulation in a bill of lading making notice of claim for damage of goods covered by the bill of lading a condition precedent to recovery by the shipper.

12. ———: ———: ———: **Waiver.** In an action against a carrier for damage to goods caused by the negligence of the defendant while in transit, where the bill of lading provided that notice in writing should be given of any claim for loss or damage within thirty days after the delivery of the goods, which provision is set up in defense, the evidence is examined and held sufficient to show a waiver of the written notice by the railroad company.

13. ———: ———: ———: ———: **Custom.** Where it was the custom of a carrier to accept verbal notice of loss or damage to goods shipped by it and treat such notice as sufficient, the usage was binding upon the company notwithstanding a provision in its bills of lading that written notice was required.

14. **APPEALS: Final Judgment: Two More Parties.** A judgment may sometimes be reversed as to one party and affirmed as to another where the judgment on appeal settles the litigation as to all parties. Where a judgment was properly rendered in favor of some defendants and improperly rendered in favor of others, the cause is reversed and remanded allowing the verdict to be retained in favor of the defendants where it was correct until a trial as against the other defendants when a final judgment could be rendered disposing of the case.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

137 App.—31

REVERSED AND REMANDED.

*Dawson & Garvin* for appellant.

(1) The act of 1905 (Laws 1905, p. 53) gave no new right of action. The shipper could always have sued either the connecting carrier if negligent, or the initial carrier. Each was liable even when the latter had not itself been negligent. Meyer v. Railroad, 120 Mo. App. 294; Halliday v. Railroad, 74 Mo. 159. Perhaps under sections 545 and 767, Revised Statutes 1899, they could before 1905, have been joined as defendants, when the negligent act complained of was done by the connecting carrier. But the act of 1905, not only says they may be sued jointly;—it does more, it provides for the venue of such an action. And in the correct view of that act the latter was its real and only purpose. State ex rel. v. Bradley, 193 Mo. 41. (2) Again, where the contract of the initial carrier is one for through shipment to a destination on the line of a connecting carrier, the law has always been that (in the absence of a lawful limitation) the initial carrier is liable as insurer throughout and also for any negligence, including negligence of any of the connecting carriers. Davis v. J. S. E. Line, 126 Mo. 81; Milling Co. v. Railroad, 127 Mo. App. 80; Railroad v. Root, 45 N. Y. 524; 1 Hutch. on Carriers, sec. 240. (3) The act of 1879 (R. S. 1899, sec. 5222), therefore did not create any new liability, but merely regulated the form of the contract which had to be adopted by the initial carrier where it intended to be bound only to the end of its rails. Sash & Door Co. v. Railroad, 177 Mo. 650. The New York courts construing a similar statute in that State (N. Y. Act of 1847, chapter 270, sec. 9), say the statute creates no new liability. They say there had been a question whether the initial carrier had power at all to make a contract for through carriage and the statute merely puts that question at rest. Railroad v. Root,

(1871), 45 N. Y. 524; Burtis v. Railroad, 24 N. Y. 272. (4) And the amendatory act of 1905 (Laws of 1905, pages 53, 54) does not relate to the subject-matter of the original act, namely, contracts for carriage. But to "any suit" to recover damages "to property transported." Therefore, its subject-matter is different from and it cannot be said that it was intended to curtail the act of 1879; and much more is it true that it was not intended to curtail or affect existing common law liabilities resting on the initial carrier. (5) Therefore (see points III and IV) the amendatory act is in no sense a proviso to the original act and the word "provided" should be read as if it were "and." Banking Co. v. Smith, 128 U. S. 181. (6) But in such actions against the initial carrier alone, it escaped or sought to escape liability (where it itself had not been negligent) by showing that the contract was not one for through carriage. If it succeeded in this defense plaintiff was thrown out of court and compelled if not too late to sue the connecting carrier. Door Co. v. Railroad, 177 Mo. 652; Grain Co. v. Railroad, 176 Mo. 484; Eckles v. Railroad, 72 Mo. App. 305; Eckles v. Railroad, 112 Mo. App. 251; Bank v. Railroad, 119 Mo. App. 1. (7) There can be no duty to elect between remedies when plaintiff is entitled to all. Prior to 1905, a carrier undertaking to carry through was "liable for any damage caused by its own negligence or the negligence of a connecting carrier." The act of 1905 did not change this liability. But if the damage was caused by the negligence of the connecting carrier then (even prior to 1905) it was also liable for such damage and plaintiff could sue it directly. Meyers v. Railroad, 120 Mo. App. 294. The shipper could sue and recover judgment against either. If the one sued did not pay, the shipper could bring another suit against the other. Belshe v. Batdorf, 98 Mo. App. 630; State to Use v. Doan, 39 Mo. 51; State to Use v. Drury, 36 Mo. 289.

*R. P. & C. B. Williams* for respondents, Mobile & Ohio R. R. and New Orleans & Northeastern Railroad.

*Watts, Williams & Dines* and *Wm. R. Gentry* for respondent, Terminal Railroad Association of St. Louis.

*Martin L. Clardy* and *Henry G. Herbel* for respondent, Missouri Pacific Railway Company.

STATEMENT.—Action for damages entailed on plaintiff by the breaking of sewer pipes while in transit over the lines of the Mobile & Ohio, Missouri Pacific, The New Orleans & Northeastern Railway Companies and the Terminal Railroad Association, which are joined as defendants. Four carloads of the pipes were shipped September 19, 1903, and one car October 15, 1903, and the petition is in two paragraphs or counts for damage to pipes in the two shipments. The number and value of the pieces broken in each car are stated. The total value of the pieces broken in the four cars which made up the first shipment is laid at $285.77, and the total value of the pipes broken in the car which constituted the second shipment at $59.40, for which sums judgments are prayed in the first and second counts of the petition. The four defendants are alleged to have been separate railway companies and "in possession of and operating connecting lines of railway which, taken together, extended from plaintiff's factory in the city of St. Louis, Missouri, to the city of New Orleans in the State of Louisiana, and that each of them was and is a common carrier of goods and passengers for hire." It is then averred as follows in the first count, of which the second is, with suitable changes to fit the shipment, a duplicate:

"That the defendant, Mobile & Ohio Railroad Company, had a business office in the city of St. Louis and was doing a railroad freight and passenger business in the State of Missouri, making through freight rates over said route out of said city of St. Louis to New Or-

leans and undertaking to carry freight therefor by means of said other railroads connecting with its road as aforesaid, from St. Louis to New Orleans in its own cars and other cars furnished by it to shippers, including this plaintiff.

"That on, to-wit, Sept. 19, 1903, plaintiff delivered to defendants and defendant received the following property, goods and chattels, to-wit:

"Four carloads of sewer pipe loaded on cars furnished by defendants said sewer pipe then being in good condition for transportation, which said property in condition as aforesaid, defendants agreed for and in consideration of certain through freight charges to be paid, well and safely to carry from plaintiff's said factory in the city of St. Louis to the city of New Orleans in the State of Louisiana and at the latter place to deliver the same to T. J. Shea in as good condition as when received from plaintiff as aforesaid.

"But plaintiff says that in violation of their said agreement and in total disregard of their duties as common carriers as aforesaid, defendants so carelessly and negligently conducted themselves in the premises that said property was greatly injured by breakage."

Each defendant filed a separate answer, but those of the Mobile & Ohio and the New Orleans and Northeastern Companies are much the same. The Mobile & Ohio Company's answer says as follows: the five cars of pipes mentioned in the petition were delivered to the Missouri Pacific Company and received by it at plaintiff's plant in St. Louis, Missouri, destined to New Orleans, and were delivered to the Mobile and Ohio Company for transportation to Meridian, Mississippi, there to be delivered to the New Orleans & Northeastern Company for delivery to the consignee in New Orleans; the Mobile & Ohio Company had no line of railway in Missouri, but its railway terminated at East St. Louis, Illinois, and the pipes were received by it in Illinois to be carried from East St. Louis to Meridian, and there de-

livered; to the New Orleans & Northeastern Company as aforesaid; in consideration of a reduction of the rate of freight plaintiff agreed with the Mobile & Ohio Company the pipes should be plaintiff's risk, and to be bound by all the stipulations, exceptions and condition printed or written in the bills of lading. The answer then pleads in defense these stipulations:

"In consideration of all of which, and especially of said reduced rate, the shipper agrees that every service to be performed by the company hereunder shall be subject to all the conditions herein, all of which the shipper accepts and agrees are just and reasonable; and further agrees that unless the other carriers to which said property may be delivered in the course of transportation to destination make different contract or contracts, the transportation over said connecting carrier's lines shall be upon the terms and conditions hereon. But neither said company nor any other carrier carrying hereunder, as hereby provided, shall be liable for any loss or damage not occurring on its own line, nor after said property is ready for delivery to consignee.

"No carrier or party in possession of all or any part of the property herein described shall be liable for any loss thereof or damage thereto by causes beyond its control, or by floods, jettison, ice, collisions, delay or quarantine, or by robbers, riots, strikes or stoppage of labor, or by leakage, breakage, chafing, loss of weight, decay, vermin, changes in the weather, heat, frost or wet.

"No carrier shall be liable for loss or damage not occurring on its portion of the route nor after the said property is ready for delivery to the consignee.

"Claims for loss or damage must be made in writing to the agent at the point of delivery, promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier carrying said property shall be liable in any event."

The answer next alleges the goods were safely carried by the Mobile & Ohio Company from East St. Louis, Illinois, to the end of its line at Meridian, Mississippi; that liability for damage, if any occurred, was specifically excepted in the bills of lading in favor of all the carriers in consideration of the reduced rate allowed plaintiff; that "plaintiff did not make claim in writing to the agent of the Mobile & Ohio Company or any other railroad company at the point of delivery, promptly after the arrival of the goods in the city of New Orleans, of damage to said pipe; and did not make claim in writing at the point of delivery of said merchandise within thirty days after the delivery thereof, and for its failure to do so, this defendant (Mobile & Ohio Company) is not liable." It is further averred the breakage of the pipes, if any occurred, was caused from imperfect loading and packing in the cars, by plaintiff itself; the cars coming into possession of said Mobile Ohio Company sealed, so it had no opportunity to inspect the manner in which the packing and loading had been done.

The answer of the New Orleans & Northeastern Company says: the five cars were delivered to it by the Mobile & Ohio Company at Meridian, Mississippi, and were transported by the former company from there to New Orleans, and to the consignee; the Mobile & Ohio Company issued a bill of lading to plaintiff, which was the contract of carriage and for the delivery of the cars of pipe to the consignee in the City of New Orleans; the cars were carried by the New Orleans & Northeastern Company under said contract from Meridian, Mississippi to New Orleans, Louisiana. The same stipulations of the bill of lading are then pleaded which are set up in the answer of the Mobile & Ohio Company, with like averments of performance by the New Orleans & Northeastern Company to carry safely over its line, of exemptions from liability for breakage and for failure of plaintiff to give reasonable notice of a claim for damages, and because the breakage, if it occurred, was due to

the improper mode in which the pipes were packed in the cars. The answer of the Terminal Association avers it was, at the time of shipment, engaged in switching cars between the termini of railroads in the city of St. Louis, Missouri and East St. Louis, Illinois, receiving cars from one railroad company and transporting them to the tracks of another railroad company in consideration of switching charges paid for the services; that it was not, as averred in the petition, in possession of or operating a railroad which, connecting with others, extended from plaintiff's factory in St. Louis to New Orleans; that it (Terminal Association) switched the cars in controversy sealed and with no opportunity to inspect their contents, from the Missouri Pacific tracks to the Mobile & Ohio Company's tracks at the latter's request, and delivered the cars to it in consideration of switching charges paid by it (Mobile and Ohio Company), and in doing so acted as agent of the company and not as agent of plaintiff; that said Mobile & Ohio Company delivered to plaintiff and plaintiff accepted bills of lading whereby the Mobile & Ohio Company undertook and agreed to carry said pipes from St. Louis and deliver the same to the consignee in New Orleans; that the Terminal Association was in no way interested in and received no part of the through freight rate charged.

The answer of the Missouri Pacific Company denied it was, in connection with the other defendants, in possession of and operating lines of railway which extended from plaintiff's factory in St. Louis to New Orleans; denied plaintiff delivered to it and it received the cars described in the petition; denied it agreed for certain through freight charges, well and safely to carry said pipes from plaintiff's factory in St. Louis to New Orleans and deliver them to the consignee; denied it ever entered into an agreement with plaintiff to transport any sewer pipes, or in violation of any such agreement, or disregard of its duty as a common carrier, so conducted

itself that the property mentioned in the petition was injured by breakage; admitted it received the cars from plaintiff consigned to the consignee at New Orleans, and said to contain sewer pipes; avers said pipes were loaded in the cars by plaintiff and on the latter's private track connecting with the Missouri Pacific Company's railway in St. Louis, and the cars were received by it locked and sealed; that at the time of the reception of the cars and prior thereto, there was a practice, arrangement, understanding and agreement between plaintiff and the Missouri Pacific Company, The Terminal Association and the Mobile & Ohio Company, whereby the Missouri Pacific Company received consignments of sewer pipes from plaintiff to be shipped to points on and beyond the line of the Mobile & Ohio Company, as agent of the latter company and not in its (Missouri Pacific Company's) individual capacity or on its own responsibility; that as such agent the Missouri Pacific Company received at plaintiff's plant in the city of St. Louis, hauled to the Terminal Association's tracks, and delivered to said Association, another agent of the Mobile & Ohio Company and a connecting carrier between the Missouri Pacific Company's line and the Mobile & Ohio line at East St. Louis, the car loads of pipes in question; that in pursuance of said practice and custom, the Mobile & Ohio Company issued bills of lading for the cars on plaintiff's surrender of receipts issued by the Missouri Pacific Company for the cars, and by said bills of lading the Mobile & Ohio Company agreed to carry the cars from St. Louis to New Orleans; that the Missouri Pacific Company only received a switching charge for the hauling of the pipes from plaintiff's plant to the Terminal Association's tracks, and its said switching charge and that of the Terminal Association, "were absorbed" in the through freight charges made by the Mobile & Ohio Company and paid to it for the carriage to New Orleans. The Missouri Pacific Company further says that as agent of the Mobile & Ohio, it promptly and

safely transported from plaintiff's plant in St. Louis to the Terminal Association's tracks, the pipes in question and there delivered the same in as good condition as when received; that it was not interested in any manner in the through freight charges for transportation from St. Louis to New Orleans, and its only connection with the transaction was the switching of the cars from the plant of plaintiff to the Terminal Association's tracks; wherefore it averred it was not responsible for any damage to the pipes sustained between St. Louis and New Orleans. A reply was filed by plaintiff denying every allegation of new matter contained in the answers of each of the defendants and averring there was no consideration for a contract with the defendants or either of them, limiting their liability or releasing one or more of them, in any way from the bargain to carry the pipes safely; averring further plaintiff agreed to pay and paid the full rate for carrying the pipes from its factory to the consignee at New Orleans, and no release of liability of either or all of the defendants was ever made or intended to be.

The pipes were loaded by plaintiff at its factory and on its tracks and a receipt, called a "dray ticket," in the following form was issued by the Missouri Pacific Company:

"1088a                    St. Louis, 9—19—03.
    "Received from Blackmer & Post Pipe Company,
        "Office Equitable Bldg. 6th & Locust Sts.,
    "Factory St. L. O. H. & C. R. R. & Arsenal St.
By Missouri Pacific Ry. Company.
    For T. J. Shea,
        At New Orleans, La.
Car No.,        and Initial        Amount        Weight
    9228   one car sewer pipe
M. & O.                    'O.R.'
M. & O.      c|o  New Orleans & Northeastern R. R."
    Stamped on this receipt appears the following:

"Goods must not be transferred from this car except in case of accident.

"Car loaded by shippers the Missouri Pacific Railway Company, Oakhill Branch, getting no revenue except for switching, only handles it on condition that under no circumstances will it be held responsible for quantity or condition of contents.

Switching $ . . . . . . . .

Per car, 10,000 lbs.

Excess at proportionate rate.

"T. P. ADAMS, Agt. Per C. H. M.

"Agent at destination will examine billing and correct errors."

The method of shipment had been for the receipt issued by the Missouri Pacific Company to be surrendered forthwith by plaintiff to the Mobile & Ohio Company at its office in St. Louis, which company then issued a bill of lading, dated the day of the shipment, for the cars covered by the first receipt, and this practice was followed in the handling of the five cars in question. Such parts of the receipts or bills of lading as are material to the controversy are exhibited:

"MOBILE AND OHIO RAILROAD COMPANY.

120 North Seventh Street.

"*Note.*—The rate named herein is a reduced rate, given in consideration of the shipper entering into the contract set out below.

"If the shipper elects not to accept the said reduced rate and conditions, he should notify the receiving agent in writing, at the time his property is offered for shipment, and if he does not give such notice, it will be understood that he desires the property carried subject to the bill of lading conditions, in order to secure the reduced rate authorized. Property not subject to the conditions of this bill of lading will be at carrier's liability, limited only as provided by common law and the Laws of the United States and of the several States in

so far as they apply.   Property thus carried will be charged twenty (20) per cent higher (subject to a minimum increase of one (1) cent per hundred pounds) than if shipped subject to the conditions of this bill of lading.

"St. Louis, Mo.    9—14—1903.

"Received by the Mobile & Ohio Railroad Company, (hereinafter called the Company), from Blackmer & Post Pipe Co. (hereinafter called the shipper, and who makes this contract as owner or agent for the owner) the following described property (contents and value unknown) in apparent good order, except as noted, and consigned and marked as indicated, to be transported by the Mobile & Ohio Railroad Company to   .   .   .   .
.   .   .   .   and thence by Railroad, Steamboat or other Forwarding Lines with which it connects, to   .   .   .   .
.   .   .   .   .   .   .   .   .
"Upon the Following Conditions:

"The company agrees to carry said property to destination if on its road; if said destination is not on its road and the company guarantees a through rate to destination, then it agrees to deliver said property to such other carrier on the route to destination as the company may select, but it does not agree to carry to any point beyond its own line, or be responsible beyond its own line, in any manner under any circumstances.

"In consideration of all of which, and especially of said reduced rate, the shipper agrees that every service to be performed by the company hereunder shall be subject to all the conditions herein, all of which the shipper accepts and agrees are just and reasonable; and further agrees that unless the other carriers to which said property may be delivered in the course of transportation to destination make different contract or contracts, the transportation over said connecting carrier's lines shall be upon the terms and conditions herein. But neither said company nor any other carrier carrying hereunder, as hereby provided, shall be liable for

any loss or damages not occurring on its own line, nor after said property is ready for delivery to consignee.

"No carrier or party in possession of all or any of the property herein described shall be liable for . . . . breakage," etc.

"Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event. . . .

"Consigned to T. J. Shea,

"New Orleans, La.

"Rates Guaranteed

"From  .  .  .  .  .  .  .  .  .

"To  .  .  .  .  .  .  .  .  .

"Charges Advanced, $

"If 1st class. . . .cts. per 100 lbs.

"If 2nd class. . . .cts per 100 lbs.

"If 3rd class 14 cts per 100 lbs.

"If 4th class. . . .cts. per 100 lbs.

"If 5th class. . . .cts. per 100 lbs.

". . . . . . . . . . . . . .cts. per 100 lbs.

"Special  . . . . . . . . . . . . . . . per  . . . . . . . . . .

*List of Articles*            *Weight*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

Oct. 16, 1903

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

Mobile & Ohio R. R. Co. Sept. 21, 1903.

F. W. BIRCHETT, Asst. Gen. Frt. Agt.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

O. R.  c—o N. O. & N. E. F. W. BIRCHETT

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The fact that the property is marked to a point beyond the company's line shall not be construed as an agreement by the company to carry beyond its line."

Evidence for defendants was the fourteen cents a hundred weight charged for freight was a reduced rate

allowed in consideration of the shipment being at the owner's risk and the other exemptions contained in the bills of lading, and that the regular rate charged when sewer pipes were handled at the risk of the carriers was thirty cents a hundredweight. On the contrary witnesses for plaintiff said no rate but fourteen cents ever was allowed; at least no other had been offered to plaintiff, except a prior rate of eighteen cents, which the fourteen-cent rate superseded; that the witnesses knew nothing of a thirty-cent rate when the common law liability of the carrier was modified, and the initials O. R. (owner's risk) were stamped on those bills of lading as a form and in compliance with a practice of the railway companies; that the freight agent of the Mobile & Ohio with whom plaintiff made shipping contracts, never spoke of any other rate or offered any other form of bill of lading. Testimony for plaintiff indicates the pipes were well packed in the cars and the quantity of breakage was greater than would have occurred if the cars had been carefully handled during transit; that part of the breakage was due to rough handling which threw the pipes together, smashing some of them. None of the evidence showed when, where or on what carrier's line the breakage occurred. The testimony for defendants on this issue went to prove the unusual breakage was due to improper loading and rough handling in unloading the pipe after they reached New Orleans. Verbal notice of the damage was given by plaintiff's agent at New Orleans and by the person who unloaded the pipes for Shea, the consignee, to "Wilson, clerk of the New Orleans & Northeastern Company at the yardmaster's office in New Orleans." There is testimony it was not customary to write out a statement of the breakage and deliver it to the railroad company's agent, but to give him verbal notice of how many pieces of pipe had been broken, which report was verified from a minute in a book kept by plaintiff's agent. When verbal notice of the damage in question was given to

said railway agent, he told plaintiff's employee the matter was all right and looked at the damaged pipes. No written claim for reimbursement was preferred until the next April, when a correspondence took place between plaintiff and the general freight agent of the Mobile & Ohio Company regarding the matter.    Two letters of said freight agent are in evidence, one written in April and the other in December, 1904.    In the first letter he returned plaintiff's written claim for damages, saying for plaintiff to correct the claim by cutting out items embraced in three cars which had been moved over the Illinois Central Railway instead of the New Orleans & Northeastern, and for plaintiff to attach the original bills of lading, or duplicates, so said general freight agent could proceed with the investigation.    The letter said the expense bills plaintiff had furnished would permit an investigation of the claim for damages by the delivering carrier, the New Orleans & Northeastern Company, but the Mobile & Ohio Company could not handle the claim to advantage without the bills of lading showing the shipments by said company; adding: "Kindly take note of our claim numbers, and in returning papers let this letter accompany same in order that special attention may be given upon receipt in this office."    The letter of the general freight agent dated December 9, 1904, stated the papers connected with the claim for damages were returned, as the Mobile & Ohio Company had given the handling of the cars a rigid investigation, and the connecting carriers had done likewise, without finding they had been roughly or improperly handled, and no doubt the damage was due to the manner of shipment and possibly to the loading.    The letter further said the connecting companies had returned the papers to the Mobile & Ohio Company, declining to assume any portion of the claim, as the shipments were loaded by plaintiff and the records were clear as to the handling of the cars.    In conclusion payment of the demand was declined.    A verdict for the

Missouri Pacific Railway Company and the Terminal
Association was directed, and on the evidence the jury
found a verdict for the other defendants.  Plaintiff ap-
pealed.

GOODE, J. (after stating the facts).—1.  (a) Sev-
eral grounds of liability are indicated in the petition
and in the instructions requested by plaintiff.    One
is a joint contractual liability of the four railway com-
panies.    These companies are stated to have owned
connecting lines of railway which, taken together, ex-
tended from plaintiff's factory in St. Louis to New Or-
leans; and in the first refused instruction (R-1) plain-
tiff asked the court to advise the jury on the hypothesis
of a joint undertaking by the four defendants to trans-
port the property from the place of shipment to desti-
nation.    (b) Though inconsistent with that theory,
plaintiff next avers the Mobile & Ohio Company had a
business office in St. Louis, was doing a freight and
passenger business in the State of Missouri, making
through freight rates over said route from said city of
New Orleans, "and undertaking to carry freight by
means of said other railroads connecting with its road
as aforesaid, from St. Louis to New Orleans, in its own
cars and other cars furnished by it to shippers, includ-
ing this plaintiff."    Said averments suggest that the
pleader intended to declare against the Mobile & Ohio
Company alone, as having contracted to carry over the
entire route and employed the other three companies
as agents and their railway as means in performing
the contract of affreightment.    But the subsequent
averments are that plaintiff delivered the goods in con-
troversy not to the Mobile and Ohio Company, but to
the defendants (i. e. all of them) and the defendants
received the goods and agreed, in consideration of cer-
tain freight charges, to carry them from plaintiff's fac-
tory to New Orleans.    The petition then proceeds to

charge all the defendants with defaults in respect of
the carriage of the property between said points.

(c)  Besides those repugnancies, allegations to show
both a breach of the alleged contract of defendants to
convey the goods from St. Louis to New Orleans and
a breach of the legal duty of the defendants as common
carriers to convey them safely, except as against the
act of God or the public enemy, are intermingled in
the same count, thus combining in one petition and one
count, causes of action *ex contractu*, and *ex delicto*.
which is not good pleading.     [1 Mo. Ann. Stat. (R. S.
1899) sec. 593; Ederlin v. Jones, 36 Mo. 350; The South-
worth Co. v. Lamb, 82 Mo. 242; Barnes v. Railroad, 119
Mo. App. 303.]     Though no point was made against
the petition by motion or demurrer, and, in the main,
the case was treated in the instructions as one *ex delicto*
on our statute providing for recovery for negligent in-
jury to property while in transit, the petition ought to
be cleared of its contradictory and confused theories,
which have rendered the case well-nigh unintelligible.

(d)  A shipper whose goods are damaged while be-
ing transported by a common carrier, has the choice of
declaring either in assumpsit on the contract of af-
freightment, or in tort for breach of the duty imposed
on the carrier by law to carry safely.    [3 Hutchinson,
Carriers (Mat. & Dick. Ed.), secs. 133 et seq. (orig. sec.
749); Heil v. Railroad, 16 Mo. App. 363; Wernick v.
Railroad, 130 Mo. App. 37; Clark v. Railroad, 64 Mo.
446.]

2.  No joint contractual liability of the Missouri
Pacific Company and the Terminal Association with
the other defendants was established.    The evidence did
not show either a partnership or such an association in
business as would present the appearance to patrons of
a general purpose to undertake jointly the transporta-
tion of freight, or a specific joint undertaking in respect
of the shipments in question.    The facts touching those

137 App.—32

points were as follows:    Neither the Mobile & Ohio
nor the New Orleans & Northeastern Company had
tracks in Missouri.   The former company's line extended
from East St. Louis, Illinois, southward, but not to New
Orleans, and connected with the tracks of the New Or-
leans & Northeastern Company at Meridian, Mississippi.
The shipments we are dealing with and other shipments
by plaintiff, were billed through to New Orleans by the
Mobile & Ohio Company and the usage observed by
said company, the Missouri Pacific Company, the Termi-
nal Association and plaintiff was this:   Plaintiff loaded
the cars on its private switch which connected with the
Missouri Pacific Company's tracks in St. Louis, the lat-
ter company hauled them over one of its branches six
miles south, transported them by boat across the Mis-
sissippi river to the Terminal Association's tracks which
company hauled them six or seven miles to the Mobile
& Ohio Company's tracks where the latter took charge
of them.   The Missouri Pacific Company was paid one
cent per hundred pounds for moving the goods from the
factory to Carondelet, and four dollars per car was
charged from Carondelet to the Mobile & Ohio tracks in
East St. Louis, which sum was divided equally between
the Missouri Pacific Company for its boat service, and
the Terminal Association for hauling the cars to the
Mobile & Ohio Company's tracks.   So far as appears the
only business of the Terminal Association was, as it al-
leged, hauling cars between the termini of different
railway companies in the vicinity of St. Louis.   This
practice was for the convenience of traffic, each of said
three companies bearing its own expenses and conduct-
ing independently its own business.   On the facts in
proof, neither by implication of law nor express agree-
ment, were the three companies mentioned joint promi-
sors to plaintiff for the carriage of its pipes over the
entire route.   [1 Hutchinson, secs. 262, 263 (orig. 169)
and passim secs. 249 (orig. 158) to 269.]   If the receipt
issued by the Missouri Pacific Company might have

been regarded as a bill of lading for through carriage, the acts of the parties preclude this view. The practice, and it was followed in the present case, was for plaintiff to surrender said receipt to the Mobile & Ohio Company and take a bill of lading from the latter covering the entire route; and if an agreement for through carriage was created by the Missouri Pacific Company's receipt in itself, the agreement was relinquished and the bill of lading issued by the Mobile & Ohio Company was substituted as the contract of affreightment; or perhaps it is more accurate to say the latter company was understood from the first to be the contracting carrier, and the Missouri Pacific Company and the Terminal Association its agents. In an action on the contract of shipment, there can be no joint recovery against the other defendants and the Missouri Pacific Company and the Terminal Association, because the latter were not co-promisors with either of the defendants. Possibly the New Orleans & Northeastern and the Mobile & Ohio Companies might be held jointly answerable in contract for an injury occurring on the former's line, if there was a through contract and no reduced rate. In such contingency the Mobile & Ohio Company would be liable as an insurer for loss anywhere on the route, and the other company for loss on its own line; and there would be sufficient privity of contract between plaintiff and the latter company for an action on the contract to lie against it for damage to the property while in its charge. [Halliday v. Railroad, 74 Mo. 159; 1 Hutchinson, sec. 236 (orig. 150).]

3. (a) Whether the bill of lading issued by the Mobile & Ohio Company constituted a contract between it and plaintiff for the carriage of the pipes from St. Louis to New Orleans, is one fundamental question in the case, and another is: was there a consideration for the exemption clauses in the bill of lading? As we have said in other cases, and as the Supreme Court intimated in Western Sash & Door Co. v. Railroad, 177

Mo. 641, if we had to answer this inquiry without regard to precedents, we would find it hard to say such a contract was one for through carriage by the Mobile & Ohio Company. But in its first interpretations of section 5222 of the statutes (3 Mo. Ann. Stat.) the Supreme Court decided said statute did not hinder a carrier which accepted freight to be transported by itself and connecting carriers, from restricting its liability as an insurer. As the statute must be dealt with in this opinion we will copy it for convenience:

"Whenever any property is received by a common carrier to be transferred from one place to another, within or without this state, or when a railroad or other transportation company issues receipts or bills of lading in this State, the common carrier, railroad or transportation company issuing such bill of lading, shall be liable for any loss, damage or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage or injury it may be required to pay to the owner of such property, from the common carrier, railroad or transportation company, through whose negligence the loss, damage or injury may be sustained; Provided, that in any suit to recover for any loss, damage or injury to property transported by a common carrier and one or more connecting carriers, the plaintiff may join as defendants the original carrier and all connecting carriers, and shall be entitled to recover in such action from the common carrier, railroad or transportation company, through whose negligence any loss, damage or injury to such property was sustained, the amount of such loss, damage or injury, with its costs of suit, and may prosecute such action in any county in this state in which, as is provided by law, a

suit may be maintained against either of such common carriers." [R. S. 1899, sec. 5222, amended Laws 1905, p. 54.]

In the leading decisions upon that law, it was declared the first clause of the section (which says when property is received by a common carrier to be transferred from one place to another within or without the State, etc.) implied the initial carrier might restrict its liability to its own line, nowithstanding the main purpose of the act was to make said carrier liable for negligence occurring on a connecting line; and notwithstanding, too, the next clause makes any railroad or transportation company that issues a receipt or bill of lading in this state, liable for loss, damage or injury to property caused by its negligence, or the negligence of any other carrier or company to which the property may be delivered or over whose line it may pass, and this interpretation of the statute is the settled law of the State. [McCann v. Eddy, 133 Mo. 59.] Though the opinion in the case just cited recognized the right of the first carrier to confine its liability to its own line, it restricted this right within narrower lines than those laid down previously in Dimmitt v. Railroad, 103 Mo. 433, wherein it was said, in effect, an agreement that the first carrier should be liable for loss or damage only on its own line, was equivalent to a contract to carry the property only to the end of said carrier's line. This proposition was repudiated in McCann v. Eddy, wherein the court declared an initial carrier which issued a contract to carry goods to destination, could not for any consideration, limit its liability to losses happening on its own line or exempt itself from liability for the negligence of connecting carriers. The opinion said:

"We cannot, therefore, give such an interpretation to the statute as would permit a carrier to contract for a through shipment and at the same time exempt himself from liability on account of the negligence of connecting carriers. Such an interpretation would in effect, operate

as a repeal of the vital provisions of the law which declares a conclusive liability in such case. The statute does not undertake to change the law in respect to liability of a carrier for his own negligence, but to extend it to connecting carriers as well and declare a liability for negligence without regard to which was in fault.

"Under these views of the law, no difficulty is found in giving construction to the contract. The agreement to carry from Stoutsville to Chicago is absolute and unconditional. The thirteenth condition or covenant can only be regarded as an attempt, on the part of defendant, to relieve itself from the responsibility of answering for the negligence of the carrier by which it undertook to complete the contract. The statute forbids such a qualification of the contract. It can only be held to relieve defendant from its common law liability of an insurer."

Cases have been brought within the scope of the rule thus stated, by construing shipping receipts like the one before us, to be agreements by first carriers to transport the freight to destination, thereby making said carriers responsible for damage carelessly caused while the property was in charge of connecting companies. These precedents are conclusive that the bills of lading in question were agreements by the Mobile & Ohio Company to carry plaintiff's pipes from St. Louis to New Orleans. [Marshall v. Railroad, 176 Mo. 480; Western Sash & Door Co. v. Railroad, 177 Mo. 641.] The bills of lading say the property was received at St. Louis by the Mobile & Ohio Company to be transported by said "company to — — — — — and thence by railroad, steamboat or other forwarding lines with which it connects, to — — — — —." The destination is left blank in the body of the receipt, but at the foot are the words: "Consigned to T. J. Shea, New Orleans, La.;" and still further below under this heading: "list of articles," we find the notation "care N. O. & N. E., F. W. Birchet." The contract says among its printed conditions, the receiving

company agreed to carry said property to destination if on its road, and if not on its road and the company guaranteed through carriage, then it agreed to deliver to such other carrier as the company might select, and did not agree to carry beyond its own line, or be responsible beyond under any circumstances. At the foot of the bill of lading and after the signatures, it was declared the fact that the property was marked beyond the company's line would not be understood as an agreement to carry beyond. The evidence shows the Mobile & Ohio Company was accustomed to accept plaintiff's goods for carriage from St. Louis to New Orleans, sometimes sending the property part of the way over the New Orleans & Northeastern railway and sometimes over the Illinois Central railway; that the Mobile & Ohio Company made a round rate for the whole shipment and the freight charge was collected at destination and divided among the companies which had hauled the goods. In dealing with such transactions, the courts have held the purpose of the statute in question "was to regulate the form in which the contract should be expressed, so as to require the carrier to embody the limitation directly and in unambiguous terms in the portion of the agreement reciting the contract to transport; and not to import or imply such limitation by way of exception or statement of conditions and qualifications, requiring on the part of the shipper a critical comparison of clauses of the contract in order to reach a proper understanding of its meaning. That is to say, that the restraint imposed by the statute, was not a curtailment of the power to limit liability to the line of the carrier accepting the freight, but a regulation of the form in which the contract having that object in view, should be drawn." This language was used by the Supreme Court of the United States in Railroad v. McCann, 174 U. S. 580, in expressing what said court deemed to be the interpretation put on the statute by the Supreme Court of Missouri, and afterwards was copied and approved by our Supreme Court

in Western Sash & Door Co. v. Railroad, supra. It might be thought the Legislature aimed to fasten on the carrier which received the goods for transportation over its own and connecting lines, responsibility for tortious injuries occurring anywhere on the route, rather than merely to prescribe a form for a bill of lading. Be this as it may, the effect of the decisions of the Supreme Court is to make a receipt naming the destination, a contract to carry through, unless the point to which the issuing carrier agrees to convey the goods, is stated in that portion of the receipt which recites the agreement to transport, and despite an attempt to limit the liability to damage occurring on its own line by inserting elsewhere exceptions, exemptions and conditions, such as that the carrier will only transport to the end of its own line, etc. The receipts so construed in Western Sash & Door Co. v. Railroad and Marshall v. Railroad, supra, were not materially different from those before us, and on the authority of those and other like precedents, we hold the Mobile & Ohio Company contracted to carry the pipes from St. Louis to New Orleans. We observe that if a receipt is construed to be a through contract, it is so for the purpose of extending the initial carrier's liability as an insurer as well as for negligence; and as the Interstate Commerce Act appears to forbid any limitation of a carrier's liability as insurer when it contracts to carry through (sec. 20 Int. Com. Act. as amended January 29, 1906) this onerous obligation must attach to interstate shipments out of Missouri, unless the bill of lading is so drawn as to satisfy the courts it is for local carriage only.

(b)    If the above views are sound, the Mobile & Ohio Company's liability to plaintiff for the breakage depends on several matters. It became liable at common law as an insurer, and without reference to the statute, for damage occurring anywhere on the route, but might restrict this common law liability as insurer for a consideration; such as a reduced rate of freight. [Hutchin-

son, Carriers, sec. 240.] These shipments occurred before the amendment of the Interstate Commerce Act in 1906 forbade such a limitation. [Id., sec. 235, 2; Id., p. 600.] If, therefore, the property was damaged in transit, but not by negligent handling, and there was a reduced rate of freight, neither the Mobile & Ohio Company nor any other was liable. But if there was no reduction in the rate of freight, the Mobile & Ohio Company must respond on its common law liability wherever the breakage occurred and whether due to negligence or not. [McFadden v. Railroad, 92 Mo. 343, 349; Scott Co. Mill. Co. v. Railroad, 127 Mo. App. 80.]

(c) Looking next at the case as coming on the statute supra, inasmuch as we have held the contract to carry was a through contract, the Mobile & Ohio Company was liable for the negligence of itself or of the New Orleans & Northeastern Company, and liable, too, for the negligence of the two minor companies as agencies or means used by it (The Mobile & Ohio) in transporting the property. There would be no difficulty on this theory of the case if the Mobile & Ohio Company had been the sole defendant. But plaintiff has joined with it the other companies, including the New Orleans & Northeastern Company, which was a connecting carrier only, by virtue of the last provision of the section, supra, which was added to the statute as an amendment in 1905. See Laws 1905, p. 504. Said proviso allows the owner of damaged property which has been transported by several connecting carriers to join in his action for damages the original carrier and all the others, and says he shall be entitled to recover from the one through whose negligence the loss was sustained. In view of this joinder, the question is whether it was incumbent on plaintiff, in order to obtain judgment against either company, to prove not only the property was damaged by negligence, but by what company. It will be observed the statute as it stood before, permitted the original carrier, if judgment was obtained against it by the shipper and it was

innocent, to recover over from the connecting carrier which was to blame. Plaintiff might have sued the Mobile & Ohio Company and have obtained judgment against it on proof the property was carelessly injured while in transit, and the Mobile & Ohio Company would have had its action over against the New Orleans & Northeastern Company if the latter was in fault. Having joined them, we think that upon a proper construction of the statute, it was incumbent on plaintiff to fasten negligence either on the New Orleans & Northeastern Company, in order to obtain judgment against it, or else on the Mobile & Ohio Company, or one of its agents the Terminal Association or the Missouri Pacific Company, in order to obtain judgment against it. This rule may curtail the efficiency of the statutory remedy, but the shipper still has an option to sue the original carrier alone or join the others. Having elected to join, plaintiff took whatever burdens were incident to this course and one of them was to prove which company was culpable. [Hutchinson, Carriers, 1347, 1355 (orig. secs. 760, 767) and citations; Chlanda v. Transit Co. et al., 213 Mo. 244.] On this question able arguments and briefs submitted at two hearings have helped us. We appreciate the importance of the rule invoked by plaintiff that no proviso of a statute shall be construed in repugnancy to the enacting clause if another construction is possible, and realize the wisdom of holding initial carriers liable for losses to property due to negligence occurring on a connecting line. Nevertheless, our judgment is that any other view of the amended statute than the one we have taken, would sacrifice the right the statute accords to initial carriers to be indemnified for damages paid to shippers because of the fault of connecting carriers. This right may be enforced by action over against the guilty company when the first company alone is sued; but if said company may be joined as defendant with connecting companies, and a general verdict given against it even when the evidence proves the

loss was due to the fault of another company, the first company would lose its right to indemnity, because the judgment in the action by the shipper would be a bar to its claim in an action over against the guilty company. It would stand on the record in the action of the shipper as a joint tortfeasor. We cannot escape the conviction that the proviso is so framed as to confine the recovery, when several carriers are made defendants, to the one whose fault is proved to have caused the loss.

4. The foregoing remarks set forth our opinion of the general propositions of law which ought to control the trial and determination of the case, and we will now examine the instructions to ascertain if they correctly state the law.

(a) Refused instruction R-4 was incorrect because of lack of evidence to show the Missouri Pacific Company and the Terminal Association were agents of the New Orleans & Northeastern Company in handling plaintiff's property. There is testimony to prove they were agents of the Mobile & Ohio Company to get the property from the factory to the Mobile & Ohio Company's tracks in East St. Louis, and if they were, the latter company would be liable for their negligence. But the instruction coupled with the Mobile & Ohio Company the New Orleans & Northeastern Company as a possible principal for which the Missouri Pacific and the Terminal Association were agents.

(b) Plaintiff's fifth refused instruction (R-5) is substantially covered in so far as it is accurate, by instruction P-1 given by the court of its own motion, and which advised the jury defendants, in undertaking to act as common carrier of freight, assumed the duty to accept and carry freight offered by any person who would pay the rate charged by said companies, except in so far as limited by special contract, but in no event could the companies escape liability for loss or damage occasioned by the negligence of themselves, their agents or servants by a contract with the shipper.

(c) The sixth refused instruction (R-6) was covered by the given instruction P-2, except that the one refused applied to all the defendants, whereas the one given applied only to the Mobile and Ohio and the New Orleans & Northeastern Companies, inasmuch as the court had instructed for a verdict in favor of the Missouri Pacific Company and the Terminal Association. Plaintiff's refused instruction R-6 was so drawn as to apply only to the shipment of the four cars mentioned in the first count of the petition, though it might also have applied to the other car, and the instruction on the point given by the court (P-2), was made to apply to the five shipments. The only question then, in connection with the alleged error in refusing instruction R-6, is whether the court erred in modifying it so as to preclude a verdict against the Missouri Pacific and the Terminal Association, a point disposed of in what is said supra and infra.

(d) The refused instructions R-7 and R-8 regarding the measure of damages, in the event of a finding for plaintiff on the two counts of the petition, were given in instructions P-5 and P-6 granted by the court, with the exception of these words: "Unless you find the facts to be that the contract of shipment was under a reduced rate, in which event the value of the pipe in New Orleans is immaterial." The same ruling was declared in the given instruction D-7. Its effect was to preclude an award of damages if the contract of shipment provided for a reduced rate, and whether or not this ruling was right will appear from what is said infra.

(e) The instruction P-3 given by the court of its own motion, told the jury that if plaintiff paid the regular rate of freight on the shipments to the Mobile & Ohio and the New Orleans & Northeastern Company, and there was no deduction by defendants or special rate awarded plaintiff, the latter was not bound by the special contract set up in the answers of the defendants; and if the jury further believed that defendant, the Mobile &

Ohio Company undertook a through shipment and to carry the pipes to a point beyond its own line, to-wit, New Orleans, the jury should disregard the stipulations in the bill of lading which sought to limit liability for negligence of connecting carriers; but defendant, the Mobile & Ohio Company was not liable as an insurer for breakage, if any occurred, on the line of an independent connecting carrier not acting at the time as its agent for the carriage of said pipes. Said instruction propounded two different propositions; first, that if the Mobile and Ohio Company and the New Orleans & Northeastern Company collected the regular rate of freight for the shipments, the special stipulations in the bill of lading were not binding on plaintiff, and this is the law. Second, if the Mobile & Ohio Company undertook a through shipment, the jury should disregard the exemptions in the bill of lading which limited the Mobile & Ohio Company's liability for the negligence of connecting carriers. It will be seen the latter proposition makes the Mobile & Ohio Company liable for the negligence of a connecting carrier if it issued a through bill of lading, which is the law. [McCann v. Eddy, supra.] Its last clause was erroneous; for if a full rate was paid, the Mobile & Ohio Company was an insurer over the whole route. [Scott Co. Mill. Co. v. Railroad supra.]

(f) The sixth instruction (D-6) given for defendants, was erroneous in exonerating the defendants from liability if the quantity of breakage was only such as was usually incident to the shipment of pipes. This was not the law as to the Mobile & Ohio Company, if the contract was a through one, unless there was a reduced rate of shipment, as to which the evidence is contradictory. The bill of lading provided for immunity from liability for breakage in consideration of a reduced rate, and this would exonerate from the common law liability in case there was a reduced rate.

(g) The instruction given by the court of its own motion (P-4) allowed the Mobile & Ohio and the New

Orleans & Northeastern Companies no benefit of the exemption contained in the bill of lading if the regular through freight rate was paid on the shipment, but said the jury might consider the clause of the bill of lading which provided no carrier should be answerable for damage not occurring on its portion of the route, in connection with the question of whether the two principal defendants acted jointly or severally in the transaction and whether their liability to plaintiff was joint or several. There is evidence to prove a joint promise by said defendants to carry and they would not be liable jointly except in the contingency discussed supra (1, f).

(h) The given instruction D-3 was erroneous as to the Mobile & Ohio Company because it said nothing about a reduced rate of freight as the condition on which the restriction of the common law liability of the Mobile and Ohio must be based. On the contrary, instruction D-5, given for defendants, rightly took account of the rule that there must have been a reduced rate of freight to exempt said company from liability if breakage occurred enroute from any cause except the act of God.

(i) The instruction D-7 and the last clauses of instructions P-5 and P-6, precluded the jury from considering the value of the property at New Orleans if the contract of shipment was not for a reduced rate. Just what was meant by this advice is obscure; but we suppose it was given on the theory that plaintiff's measure of damages, if he was entitled to recover at all, would be the difference between the value of the property at destination in its damaged state and what its value would have been if undamaged; and it looks like the intention was to prevent a verdict for plaintiff if there was a reduced rate. Even if such a rate was allowed, these companies would be liable for damage due to careless handling; that is, the guilty one would be. If a full rate was charged, the Mobile & Ohio Company would be liable for the entire breakage. In the latter contingency the Mobile & Ohio Company was an insurer, and the measure

of damages to be awarded against it would be the difference between the value of the shipment at New Orleans if the pipes were sound and the value with some of them broken. In the second case the measure of damages to be awarded against the company in fault, would be the difference between the value of the shipment at New Orleans, less usual breakage, and its value in the condition it was in. That is to say, the responsible carrier would only have to answer for such breakage as was due to its fault.

(j) The instruction D-8 given for defendants involved the notion that the burden was on plaintiff to prove which carrier's fault damaged the pipes, but the charge lost sight of the possible liability of the Mobile & Ohio Company as an insurer in the event the charge for carriage was not reduced.

(k) As regards notice of claim for loss, the jury were instructed (D-1) written notice must have been given in writing to the agent at the point of delivery within thirty days after delivery, and if no such notice was given to the agent of the New Orleans & Northeastern Company, the suit could not be maintained, unless the jury found the plaintiff, after said thirty days, made claim in writing to said company (N. O. & N. E. Co.) and the Mobile & Ohio Company, as its agent for that purpose, and this notice was accepted and treated as a claim under said proviso; or unless, further, the jury found, under other instructions, the contract and bill of lading was not made at a reduced rate. The latter proposition was decided by the Supreme Court in George v. Railroad, 214 Mo. 551, 113 S. W. 1099 and under said authority there must be a consideration to sustain the stipulation making notice of a claim for damages a condition precedent to recovery by the shipper; but as said repeatedly, the jury might have found there was a consideration in the present case. The instruction was otherwise erroneous. The correspondence with the General Freight Agent of the Mobile and Ohio Company

shows conclusively said company waived the omission to give notice in thirty days, and hence plaintiff's action could not be defeated as against said company by the omission. [Summers v. Railroad, 114 Mo. App. 452, 458; Keyes, etc., Co. v. Railroad, 13 Mo. App. 144.] As regards the New Orleans & Northeastern Company, the evidence inclines to prove a uniform course of business prevailed for plaintiff to give verbal notice to its agent of such a claim, which was accepted and treated as good notice; and this usage would, if it had been recognized by said company, be binding. [2 Hutchinson, Carriers, sec. 1080.]

5. The Terminal Association and the Missouri Pacific Company would be liable in tort for their negligence, but as there was none proved against them, the court was right in directing a verdict in their favor. And we would sustain the judgment for the other two defendants for want of evidence to prove which was negligent, but for the fact that the petition was treated as counting on a possible liability without regard to negligence, and some of the given instructions (P-3 and P-4) submitted this ground of recovery.

6. We have been pressed to affirm this judgment as to the Terminal Association and the Missouri Pacific Company even if it must be reversed and the cause remanded as to the other defendants. Judgments are sometimes reversed as to one party and affirmed as to another. [Hunt v. Railroad, 89 Mo. 607, 609; Kleiber v. Railroad, 107 Mo. 240; State ex rel. v. Tate, 109 Mo. 270.] We have found no case in which this was done except when the judgment on appeal settled the litigation as to all parties. If a remand is necessary, such a course would seem to be in violation of the statute which says there must be but one final judgment in an action. [R. S. 1899, sec. 733.] Said statute has been held to mean the one final judgment for which it provides shall dispose of the controversy as to all the parties to the cause. [White Lime Co.. v. Bauman, 55 Mo. App. 204; Sater v.

Hunt, 61 Mo. App. 228.] Now, if we should affirm the judgment as to the two companies mentioned, we would have a final judgment here in their favor, with the cause remanded for another trial and judgment disposing of the controversy as to the remaining defendants; which would be opposed to the authorities supra. But we are of the opinion that as no evidence of negligence on the part of the Missouri Pacific Company or the Terminal Association was adduced, and as there is no common law liability against either of them, the verdict in their favor may be retained until the verdict comes in settling the controversy as between plaintiff and the other defendants, and one judgment may be rendered then completely disposing of the cause.

The judgment is reversed and the cause remanded. All concur.