WALDEN, Judge
(specially concurring) :
While I agree that an affirmance is in order, I disagree with the reasoning and route traveled by the majority. I disagree because the case was not tried, decided, or briefed to us on the point seized upon by the majority. This is, of course, a departure from correct appellate procedure. If the point is so fundamentally dispositive, counsel should have been at least afforded an opportunity to refute or explain it.
Regardless of the above, the appeal as presented may be judicially considered and decided upon the merits in my opinion as here follows.
The trial court found “that this is a case involving special damages and the plaintiff has not proved that the defendant had notice or knowledge sufficient to charge it with such damages.” Judgment was entered for defendant. Plaintiff appeals. We affirm.
Plaintiff shipped frozen citrus concentrate to a customer via defendant carrier. It arrived in a partially thawed and damaged condition. The defendant’s liability for this condition is not disputed.,
Through a long standing agreement between the parties the product was re-frozen, returned to plaintiff, and by it reworked to restore its original degree of marketability. The expense of this procedure amounted to $6,944.83. Plaintiff was recompensed for this sum by defendant, as had been agreed.
But, the plaintiff shipper claims more. Plaintiff had later resupplied its customer with a new shipment of concentrate. Because of a price protection policy in effect between them, the shipper refunded $2,800 to its customer as a consequence of a price drop occurring subsequent to the second delivery. It is clear that defendant carrier had no knowledge, actual or constructive, of such price protection agreement and had not consented to indemnify the shipper be *202 cause of its pay-outs under the protection policy. Thus, when the carrier refused to pay the sum so refunded, the instant suit resulted.
Looking at plaintiff’s complaint, it sounds in tort, recites defective delivery and demands general damages in excess of $500 which were proximately caused by the defendant’s negligent carriage. If there were not more, I would necessarily agree that the damages would be measured according to such criteria as proximate cause and foreseeability, “ * * * a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.” Prosser, Law of Torts, § 49 (3rd ed., 1964) at 282. Also, I do not quarrel with the proposition urged by the shipper that in such cases it is entitled to recover “ * * * for the full actual loss, damage, or injury to such property” under the terms of the Interstate Commerce Act, 49 U.S.C. § 20(11) (1970). Thus, I could envision under normal circumstances, and absent any agreement to the contrary, that here the carrier would be liable to the shipper for the market value of the concentrate to the customer on the proper date of delivery (which necessarily would include the shipper’s profit), less salvage, if any.
However, the plaintiff’s complaint and the foregoing ignores the fact that the parties entered into a contract to handle the situation and the damages in a special and particular way. That way is outlined above and consists of re-shipping the concentrate to the shipper where it is reconditioned and returned to its initial condition, all at the carrier’s expense. There was mutual consideration for this contract. It minimized the loss and helped maintain the reputation of the shipper’s label- and product.[1]
It is clear that the liability of a common carrier may be limited or qualified by special contract with the shipper.[2] Here there was such a contract and thus the damages are to be measured according to its terms and the law of contracts.
*203 Compellingly and dispositively, too, it has not been shown that the carrier breached this special contract for the handling of the damages.
With this in mind and repeating that the carrier had no notice or knowledge of the price protection policy, I agree with the trial court decision and hold that this claim of special damages was not recoverable because it cannot be said to have been in the contemplation of the parties and was not legally foreseeable. 9 Fla.Jur., Damages §§ 21 & 32; 22 Am.Jur.2d, Damages §§ 58 & 59.
I would affirm for the foregoing reasons.

. The mutual benefit of this agreement is manifest in the correspondence which took place between shipper and carrier.
Edmund Burke, General Freight Claim Agent for Southern Pacific, typifies the carrier’s view in a letter to R. W. Maeirs, Vice President and General Manager of Winter Garden Citrus Cooperative, dated April 2, 1964, where he says, “I regret the inconvenience to which you have been subjected and thank you in advance for your splendid cooperation and help in minimizing the loss.”
The development of this procedure was discussed in the testimony of John H. Thompson, sales manager for Winter Garden Citrus Products Cooperative: “It was developed because we had some cars go out that arrived in a similar condition, and in one instance, particularly, the railroad took over the merchandise. And when the consignee had refused it, sold it as salvage, and this man’s labels ended up in a discount house, which was adverse to his business. Also the claim was excessive, and we felt in order to minimize the railroad’s liability in such an instance as this, if the merchandise were returned to us, we could salvage it to a much greater value than what they would be able to do in selling it as salvage.” According to Mr. Thompson’s testimony, this procedure had been employed for some years.

. “The liability imposed by the statute [Interstate Commerce Act, 49 U.S.C.A. § 20(11) 1970] is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence.” Missouri, K. & T. R. Co. v. Harriman Brothers, Tex.1913, 227 Ü.S. 657, 33 S.Ct. 397, 57 L.Ed. 690. See also, Donovan v. Wells Fargo & Co., Mo.1915, 265 Mo. 291, 177 S.W. 839; Blackmer & Post Pipe Co. v. Mobile & O. R. Co., Mo.1909, 137 Mo. App. 479, 119 S.W. 1.
It is tantamount to a compromise and settlement whereby a property right or claim is settled by a mutual concession. As such the compromise agreement is substituted for the pre-existing claim so that the liabilities of the parties are measured by the terms of the agreement. See 6 Fla.Jur., Compromise and Settlement, I 2 et seq.