[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 542 
I think that it must be assumed in this case that the assignment made by Champlin and Wood was a valid transfer of Champlin's property, as between them and the assignors, and that the plaintiffs were entitled to maintain this action, even if it be conceded that the validity of such an assignment might be questioned by the creditors who were in a position to contest it, in an action brought for that purpose.
By the assignment, the title to the stocks passed, and became vested in the plaintiffs, and the defendant was liable to account to the plaintiffs, the same as it should have been to Champlin, their assignor, prior to the time when the assignment was actually made and executed. In the subsequent sale and disposition of the stocks, the defendant acted by virtue of the authority, and with the assent of the plaintiffs, and as their bailee. The accountability of the defendant was in no respect changed thereby, and the defendant had only a right to claim as a charge against the proceeds arising upon the sale of the stocks, such amount as would have been necessary for the plaintiffs to have tendered on the day of the assignment, with interest and expenses, to cancel, pay up and discharge the claim of the defendant, by the pledge of the stocks, and not beyond that sum. The stocks being thus pledged for a specific and particular purpose, by the assignors, precludes the idea of a set-off as against the assignees, and no such question arises. If any legal set-off had existed independent of the pledge of the stocks, it would only be valid against moneys realized upon their sale, and when they were sold, the title to the moneys had passed to the plaintiffs, and the claim of the defendant was against the plaintiffs' assignor. At the time of the assignment, no debt was due from the bank to Champlin, and it never became a debtor of Champlin. The debt was due from the defendant to the plaintiffs, and was never due to their assignor, and to the plaintiffs alone was the defendant liable to account. The question then arises, and it is the principal question to be determined in this case, what was the extent of the pledge of the stocks made by Champlin, *Page 544 
the plaintiffs' assignor, to the defendant? The referee has found that by the agreement between Champlin and the defendant, made on the 27th of February, 1857, Champlin made a further pledge of the stocks in the defendant's hands to secure the payment of the draft of $3,000. It was entirely competent for the referee to determine, as a matter of fact, from all the evidence in the case, what further pledge, if any, was made of the stocks in question, and as the judgment of reversal does not state that the reversal was made upon questions of fact, it must not be deemed to have been reversed on questions of fact. (Code, §§ 268, 272.) We must, therefore, consider the decision of the General Term, reversing the judgment of the referee, as involving a question of law alone. Regarding the finding of the referee in that respect, I think it was not erroneous, and that it cannot be considered as error in law that the further pledge only included the $3,000 draft, unless he has found some fact inconsistent with the pledge found to have been thus made. This has not been done, and therefore the judgment of the referee could not be reversed upon any such ground.
It is not important to examine the question of fact presented to the referee on the trial, but looking at the evidence in the most favorable light in which it can be regarded for the defendant, there was not, in my opinion, sufficient testimony to establish a pledge of the stocks, for any amount, on the 27th of February, beyond the $3,000. They had been previously hypothecated by written instruments, for particular loans, which were specified, and any pledge of the stocks for other loans, except the draft for $3,000, was not specifically made at the time last mentioned. The conversation between Champlin and the president of the bank did not specifically refer to any prior loans. And as all the other liabilities of Champlin were secured, I think the remark of Champlin, that the stocks were security for his discounts and the draft, had reference to the loans for which they were hypothecated, and not to those which were otherwise secured, as well as to the draft then discounted. He evidently meant to refer to loans for which they were pledged, and not to those which *Page 545 
they did not cover. This embraced several notes, and did not include the loans made by the defendant upon the paper of Roberton Dustan. Nor is it manifest that it was intended to embrace the latter, from any thing which passed between the parties at that time.
It may also be remarked, that Champlin only desired, at this time, a discount of the Paducah draft, and it would have been somewhat remarkable if he had offered to pledge the stocks for other paper, without being requested to do so, when it was not claimed that such paper was not already secured to the defendant, and when no additional security was demanded. It would have been more singular and strange to have made such a pledge, as the only objection made to the proposition to discount the draft in question was, that it was the rule of the bank not to take paper with a single name without collaterals. This striking fact renders it quite clear that no objection was made to the discount, on account of the other paper, and that the intent of the parties was, that the stocks should be pledged solely and alone, as security for the draft. The subsequent interviews between the plaintiffs and the officers of the bank, tend strongly to sustain the position that the stocks were not further pledged for any thing but the draft. Although, as already stated, the question does not now arise, yet the facts to which I have adverted tend strongly to sustain the correctness of the referee's conclusion upon the evidence presented upon the trial.
We have to consider the exceptions taken by the defendant upon the trial, to the exclusion of testimony offered by him. The evidence offered as to the declarations of Champlin prior to the assignment was to the effect that Champlin then understood and stated that all the notes which Roberton Dustan had loaned to him, and which had been discounted by the defendant, were to be paid out of the collaterals held by, and which he had assigned to the defendant, and that an agreement based upon this statement was made by which the amount for which Roberton Dustan were preferred in the assignment was fixed. *Page 546 
Assuming that the declarations of Champlin were competent, as against the assignees; that they were admissible, within the rule of evidence, that they were an admission against his interest at the time when made; that they comprehended a statement of a fact, as to the form and effect of the pledge made, and not an opinion of the witness, as to the extent and nature of the security, and conceding that these declarations could properly be introduced, without first laying the foundation by calling Champlin's attention to the subject, and were not affected by his subsequent examination, as a witness for the plaintiff in full on the question of fact at issue, yet I am of the opinion that in no aspect in which they can be considered, does the ruling of the referee, excluding the evidence, furnish occasion for a new trial. As the case was disposed of by the referee, the testimony offered was in no sense material, and could not have affected the result. And even if the declarations of Champlin, and the proof offered, can be considered as of any importance upon the question involved, the evidence was substantially disclosed afterward upon the cross-examination of the same witness. As to their materiality, it will be noticed that the referee's finding was put mainly upon the testimony of Palmer, the president of the bank, which was in conflict with Champlin's evidence as to what took place at the time the stocks were pledged, and the construction he put upon Palmer's statement.
The referee ignored entirely the version given by Champlin, in regard to the transaction, and considered it was insufficient to overcome the force of the distinct and positive statements of Palmer, and accepted the narration of the latter as the precise occurrence. Upon this view of the subject, and upon the basis that Palmer was entirely correct, he decides the case, adversely to the defendant, as to a larger portion of the plaintiff's claim. It is very evident that the evidence offered could have no influence or weight upon the conclusion of the referee, as to the contract between these parties. The declarations of Champlin would have added nothing to the statement of Palmer, which the referee *Page 547 
decided constituted the basis of the contract, and as no injury would have resulted from their exclusion, there is no good and sufficient ground for a new trial. But, if the evidence was improperly excluded, I think it was substantially introduced afterward, and the difficulty entirely obviated by the testimony of the same witness. The witness testified that he tried to make an estimate of the liabilities of Roberton Dustan, outstanding before the assignment, and $11,000 was specified on the groundshe had stated, and that sum was put in upon the assumption that the firm paid all their notes; that he supposed that he would not have to pay the notes in the Broadway bank, and it was expected that these notes were to be paid out of the collaterals. The witness evidently referred to the conversation between him and Champlin, and the grounds stated were what he had previously testified, after the offer of testimony was made, and the evidence excluded, and which on motion was stricken out, to the effect that Champlin had told him that the Broadway bank had sufficient collaterals to cover his indebtedness, including the discounted notes of Roberton Dustan, and that neither the bank nor the firm could lose any thing by his liabilities to the bank. The witness testified afterward, upon the same cross-examination, that there was an open question about the Broadway bank collaterals covering all these notes, and that he did not know what the value of these collaterals were, except from Champlin's statement. It is very evident, I think, that, upon comparison, the evidence excluded and that introduced were of the same character, and the evidence introduced covers substantially the same grounds, and was to the same effect as that embraced in the offer. In either point of view it would seem to be a statement of Champlin's views, and, if of any importance, it no doubt had its proper weight with the referee in his determination of the case.
The question put to the defendant's cashier, whether he could have said with truth certain things which he denied saying, called for an inference and conclusion of the witness, and, I think, was properly excluded. *Page 548 
The question put to the witness Dustan, "For what indebtedness or liabilities were these collaterals deposited with the defendant?" was also properly excluded. The previous examinations showed that the witness had no knowledge in regard to the subject inquired of, and called for his conclusion, and not for facts. It would be allowing considerable latitude of inquiry to permit a witness to testify generally as to his knowledge of a fact, when the evidence previously given by him had shown that he was not present when the transaction took place. If the witness had any knowledge of particular facts bearing upon the question, his attention should have been called to them, and the facts proved, but without proof of any knowledge whatever, the question put was not admissible.
The question put to the defendant's cashier, whether he had stated in an interview with Van Blarcom, when the notes were discounted for the assignees, any thing in regard to the notes held as collateral, does not appear to have been material, as the question was, whether the witness had made the statement sworn to by Van Blarcom, and he had already denied that he had.
As no right of set-off existed, there was no error in rejecting the claim for a balance of account in favor of the defendant. There was no such variance, I think, between the assignment set forth in the complaint and the evidence, as could not be disregarded. Nor was the plaintiff entitled to the affirmative in summing up the case.
I discover no error in any of the rulings of the referee, and am satisfied, after a careful examination, that the judgment of the General Term of the Superior Court should be reversed, and that the judgment entered upon the referee's report, should be affirmed.
All the judges concurring,
Judgment affirmed. *Page 549