THE SOUTHWORTH COMPANY, *Appellant,* v. LAMB.

1. **Pleading**: MISJOINDER: WAIVER. Actions *ex contractu* and *ex delicto* cannot be united under the code in the same petition, but the misjoinder must be taken advantage of before verdict. A motion at the close of plaintiff's evidence to compel him to elect, is not too late.

2. **Pledge**. A pledgee without a special agreement to that effect, cannot retain the property pledged for any other debt than that for which the pledge was specifically made.

3. **Trover**: OWNERSHIP. Plaintiff in an action for trover and conversion must show either general or special property in the thing converted.

4. **Pledge**: PAWNOR'S INTEREST, SALE OF: TROVER. The pawnor of a chattel, notwithstanding his pledge, has still a vendible interest in it, and the vendee of such interest can maintain trover against the pawnee, if the latter refuses to deliver it to him on his tendering the amount of the debt.

*Appeal from Hannibal Court of Common Pleas.*—HON. THEODORE BRACE, Judge.

REVERSED.

*Smith & Krauthoff* for appellant.

The court erred in requiring plaintiff to elect. When irrelevant or redundant matter is inserted in a pleading, the remedy is to strike out the same by motion, or where the allegations are indefinite and uncertain, the court may require the pleading to be made definite and certain. *O'Connor v. Koch,* 56 Mo. 253; R. S. 1879, §§ 3529, 3530. Even where the practice to compel an election prevails, it is done on notice to adverse party and before answer. *Wilson v. Cleaveland,* 30 Cal. 192. The court erred in sustaining the demurrer to the evidence. *Wilson v. Board of Education,* 63 Mo. 167; *Buesching v. Gaslight Co.,* 73 Mo. 219. It was the legal duty of defendant, when his debt was paid, to deliver up the securities given and pledged for the payment to the said W. & E. P. & L. Co., or its assignee. *Welton v. Hull,* 50 Mo. 296. The principles of law governing the

application of payments, as laid down in the authorities, can have no pertinency here. *McCune v. Bell,* 45 Mo. 174; *Waterman v. Younger,* 49 Mo. 413; *Gatner v. Kemper,* 58 Mo. 567.

*John T. Redd* for respondent.

1. To maintain trover for the conversion of a chattel, plaintiff must have a title, general or special, to the property. *Bertholf v. Quinlan,* 68 Ill. 297; *Barton v. Dunning,* 6 Blackf. 209. *Kemp v. Thompson,* 17 Ala. 9; *Hickock v. Buck,* 22. Verm. 149; *Swift v. Monley,* 10 Vt. 208. 2. He must also show an immediate right to the possession. *Owen v. Knight,* 4 Bing. (N. C.) 54; *Clark v. Draper,* 19 N. H. 419; *Burton v. Tannchill,* 6 Blackf. 470. 3. To maintain trover for a chattel, plaintiff must show, 1st, That he is the owner of the chattel (general or special). 2nd, That he has the immediate right to the possession; and 3rd, A conversion by defendant. *Ayers v. French,* 41 Conn. 150; *Shoorz v. Pickens,* 10 Ind; *Zimmerman v. Bank,* 35 Wis. 368. 4. There was no evidence tending to show any ownership, general or special, of the bonds and warrants in plaintiff. If there had been, it was the duty of plaintiff to call the attention of the court below to any portion of the evidence relied on as tending to show title. This appellant did not do or attempt to do. Rules 9 and 10 of this court. 5. The delivery of the bonds and warrants to the respondent, Lamb, by the Winchell & Ebert Printing & Lithographing Company, to be held as collateral security for the $5,000 note, constituted a pledge, vesting in respondent a qualified ownership as bailee, leaving the general ownership in the Winchell & Ebert Printing & Lithographing Company, the debtor. " The pignus or pledge is where anything is obligated for money, and the possession is passed to the creditor." 5 Bacon's Abmt., (1 Am. from 6 Eng. Ed.) Title Mort. a, p. 2; *Barrow v. Poxton,* 5 John. 261. A pawn differs from a mortgage in two important

particulars, viz : 1st, In a pawn, the legal title or owner-- ship continues in the debtor, pawnor ; in a mortgage, the legal title or ownership passes and vests in the creditor, mortgagee.     2nd, A mortgage of a chattel is sometimes valid without the delivery of the possession (as in the case of our recording acts).   It is otherwise as to a pawn.   *Glea- son v. Drew*, 9 Greenl. 82 ; *Ward v. Summer*, 5 Pick  60 ; *Haven v. Low*, 2 N. H. 13 ;   *Brown v. Bemont*, 8 John. R.  97 ; *McLean v. Walker*, 10 John. R. 471.    A contract of pledge is a contract *in rem*, where the delivery of the thing pledged is not the consequence of the con- tract, but the very essence of it.  *Lee v. Bradley*, 8 Mar (La.) Rep. 57 ; *Burrow v. Poxton*, 5 John. 261 ; 6 East 261 ; 1 Pick. 607 ; 1 Caines Cases 200.   The appellant had no common law or statutory lien on the bonds and warrants by virtue of the agreement between the appellant and the W. & E. Print. & Lith. Co.   *Moss v. Townsend*, 1 Balstrode 207 ; *Hamlet v. Tallman*, 30 Ark. 505 ; *McCoffey v. Wooden*, 60 N. Y. 459 ; 7 Wait's Defenses 215 ; 6 East 27.   The bonds and warrants having been pledged to respondent for the payment of the $5,000 note, he had the right to hold them for payment of his two notes executed by the pledgor for $716.75.   *Demainbray v. Metcalf*, 2 Taunt. 691 ; 5 Ba- con's Abridg., 80 ; *Jarvis v. Rodgers*, 15 Mass. 407.

Ewing, C.—This suit was commenced in the Hannibal court of common pleas upon facts or allegations substan- tially as follows : In December, 1872, the Winchell & Ebert Printing & Lithographing Company, a Missouri cor- poration, made and delivered its note to the National In- surance Company, also a Missouri corporation, for $5,000 bearing ten per cent interest, and to secure its payment ex- ecuted and delivered a deed of trust on certain property, conveying it to W. C. Foreman, as trustee.   On July 1st, 1874, this $5,000 note was bought by Alfred W. Lamb, the defendant herein, who on July 3rd following executed in duplicate the following contract in writing to-wit:

" HANNIBAL, Mo., July 3, 1874.

" This certifies that the Winchell & Ebert Printing & Lithographing Company has deposited with me as collat- eral security for the payment of their note for $5,000 dated Dec. 17, 1872, and assigned to me by the National Insur- ance Company, of Hannibal, Mo., (the payment of which is extended to July 1st, 1875), the following described county warrants and bonds issued by the several counties named in the state of Missouri to-wit:" (Here follows the list of warrants and bonds.)

" The said note for $5,000 is hereby extended in time of payment until July 1st, 1875, with interest on $5,000 from July 1st, 1874. And when said note is paid in full, the foregoing bonds and warrants shall be returned to said Winchell & Ebert Printing & Lithographing Company, or their value accounted for by me. I reserve the right to sell said collaterals at any time before maturity of said note, at such price as may be agreed to by said Winchell & Ebert Printing & Lithographing Company, the proceeds of such sale to be applied at time of sale on said note, and if said note be not paid at maturity, then I reserve the right and am fully authorized to sell said collaterals at public sale, on ten days' notice, published in some paper in Han- nibal, Mo., or by three written or printed hand-bills posted in three public places in said city, applying the proceeds first to the payment of costs of sale, and next toward pay- ment of said note. And the said Winchell & Ebert Print- ing & Lithographing Company shall bear all the expenses connected with negotiating the sale of or collecting said county warrants and bonds, and they shall use every rea- sonable effort to sell or collect said warrants and bonds be- fore the date of maturity of said note (July 1st, 1875.)

A. W. LAMB.

" Signed in duplicate, this 1st day of July, 1874.

THE WINCHELL & EBERT P. & L. Co.,
By J. R. Winchell, P't."

It is then alleged that these collaterals are of the value of $2,928.85. The five thousand dollar note becoming due and being unpaid, it is alleged that plaintiff, a Massachusetts corporation, contracted to loan, and did loan to the Winchell & E. P. & L. Co. $20,000 upon condition that the said W. & E. P. & L. Co. should, out of the proceeds, pay off the Lamb $5,000 note, and transfer to plaintiff as security the collateral held by Lamb under the contract above set out, and a deed of trust on certain other property which is not material to refer to in this case. That this $20,000 note was made and delivered in November, 1875. Made the deed of trust and transferred the above named collaterals, and that Lamb had notice of and consented to said agreement. That in December, 1875, Lamb acknowledged the payment of the $5,000 note and released the deed of trust, but refused to deliver up the collaterals. That afterwards plaintiff foreclosed its deed of trust, applied the proceeds to the $20,000 loan which left due and unpaid thereof about $10,000. That the W. & E. P. & L. Co. was insolvent, and that Lamb refused to deliver said bonds and warrants to plaintiff on demand, but, on the contrary, has converted them to his own use, wherefore plaintiff prays judgment for damages in the sum of $2,928.85.

The defendant answering said that long before the warrants and bonds were assigned to him the W. & E. P. & L. Co. owed him money for which he sued in May, 1877, and had judgment for $1,905.50. That at and prior to the payment of the balance of the $5,000 note he notified the W. & E. P. & L. Co. that he would hold the collaterals until that judgment was paid off. That part of said bonds and warrants were sold with the consent of the said printing company, and the proceeds applied to the payment of the $5,000 note; that some of them were returned to said W. & E. P. & L. Co., and that some of them amounting to $620.-57 were collected by him and applied to the payment of the unsecured indebtedness due him from said printing company, at which time he had no notice of any transfer of

said securities to plaintiff.   The replication denied the new matter set up in the answer.

At the close of the evidence offered by plaintiff the defendant filed his motion asking the court to require plaintiff to elect upon which allegations in the petition it would stand.   Whether upon the ground that defendant by the writing, pledging the collaterals for the payment of the $5,000 note, and by which they were to be redelivered to the W. & E. P. & L. Co. when that note was paid; or upon the ground that the plaintiff was the owner and defendant had wrongfully converted them to his own use.   This motion was sustained.   The plaintiff elected to stand on the count for conversion, and thereupon defendant demurred to the evidence which was sustained, and there was a verdict and judgment for the defendant.

I.   The petition evidently undertook to state two different causes of action.   One upon the theory that when the county bonds and warrants were delivered to Lamb as collateral for the payment of the $5,000 note he entered into a written contract to return the same when the note should be paid; that the collaterals had thereafter been sold and assigned to the plaintiff and that Lamb was bound under this written contract to return them.   The other theory was that plaintiff was the owner who demanded the delivery of the collaterals, and that the defendant refused and converted them to his own use.   This is evidently a misjoinder of causes of action.   It is uniting in the same petition an action *ex delicto* with an. action *ex contractu*, which is not permitted by the statutes.   R. S. 1879 § 3512; *Jamison v. Copher*, 35 Mo. 483; *Ederlin v. Judge*, 36 Mo. 351.   This might have been taken advantage of by demurrer.   R. S. 1879, § 3515.   In *House v. Lowell*, 45 Mo. 383, treating of this subject, Judge Bliss said " to give the statute a construction that, in a case where the plaintiff has alleged real grievances, and where the court has authority to redress them, shall permit the defendant to lie by, go to trial upon the merits, accumulate costs, and, if defeated ar-

rest the judgment because the petition contains too many grievances, or is informally constructed, would make pleadings but a trap for the unwary, and defeat the great end of the code. But this was not a motion in arrest, after verdict, but a motion bringing to the attention of the court the fact that two improper causes of action were joined in the petition. This amounted to a demurrer, and, although coming a little late was properly sustained. It was was filed after hearing plaintiff's evidence, and was thus more favorable to plaintiff by developing the facts upon which a verdict must be based before electing upon which cause of action to stand. If filed after the verdict it would undoubtedly have been too late, and would have waived the defect; but coming as it did, after hearing only plaintiff's evidence and before the case was submitted to the jury it should have been sustained.

II. After the motion to elect was sustained the defendant demurred to the evidence which was sustained. In this we think the circuit court erred. The plaintiff's evidence tended to show that the county bonds and warrants were pledged to the defendant by the W. & E. P. & L. Co. for a specific purpose to-wit: "has deposited with me as collateral security, for the payment of their note for $5,000," etc., "and when said note is paid in full the foregoing bonds and warrants shall be returned to the said Winchell & Ebert Printing and Lithographing Company, or their value accounted for by me." This is an extract from the written agreement between the W. & E. P. & L. Co. and the defendant when the collaterals were pledged. It, also, tended to prove that the $5,000 note was fully paid off and that the W. & E. P. & L. Co. had sold, transferred and assigned said collaterals to the plaintiff.

III. Here it would seem the object of the pledge had been performed. The note was paid. The pledge in the absence of any different agreement between the parties being performed, ceased to be operative and the whole beneficial interest became absolute in the hands of the

true owner. *Ward v. Ward,* 37 Mich. 253. Independent of a special agreement for any other debt than that for which the pledge is specifically made the pledgee cannot retain the pledge; 2 Kent, top p. 761 (8th Ed.); *Jarvis v. Rogers,* 15 Mass. 369; *Tutonia National Bank of New Orleans, v. Loeb & Co.,* 27 La. An. 110; but must deliver it when his lien is extinguished. In Story on Bailments it is said: "Indeed the whole doctrine of extinguishment is resolvable into the first elements of justice, and is founded upon the express or implied intention of the parties to extinguish the pledge, or upon a virtual extinguishment by the operation of law." §§ 365, 361, 359; Schouler on Bailments, 233.

IV. To maintain this action it was necessary for the plaintiff to establish the fact of general or special property in the thing converted. 68 Ill. 297. This we think the evidence tended to prove, and if it did establish ownership, then the plaintiff had the right to sue in trover. In *Franklin v. Neate,* 13 Mees. and Wels. 480, it was held: "The pawner of a chattel still retains his property in it (though qualified by the right of the pawnee) which he has a right to sell and by the sale to transfer that property to the buyer; and if the pawnee on the buyer's tendering him the amount due, refuses to deliver it up, the buyer may maintain trover to recover it." *Hunt v. Holton,* 13 Pick. 216; *McLean v. Walker,* 10 Johns. 471; *Van Blarcom v. Broadway Bank,* 37 N. Y. 540. In this case the plaintiff if it can recover at all could only recover upon such of said collaterals (county bonds and warrants) as had not been sold and the proceeds applied to the payment of the $5,000 note, or such as had not been returned to the W. & E. P. & L. Co. before the defendant had received notice of their sale and transfer or bailment to the plaintiff. In other words, the defendant had the right to sell any or all of said securities and apply their proceeds to the payment of the $5,000 note. He, also, had the right, before he was notified that the W. & E. P. & L. Co. had assigned them to plaintiff to return them

to the W. & E. P. & L. Co. And all such as were not so sold and appropriated and all such as were not so delivered to the W. & E. P. & L. Co. the plaintiff may recover, if the facts justify it.

V. The court excluded from the consideration of the jury three letters written by Winchell, the president of the W. & E. P. & L. Co. to Wells Southworth, president of the plaintiff. These letters were wholly immaterial. It was only necessary to show that the collateral securities in controversy had been sold, assigned or pledged to the plaintiff, and they were very properly excluded. The judgment below is reversed and the cause remanded. All concur. HOUGH, C. J., absent.