# PEYCKE BROS. COMMISSION COMPANY, Appellant, v. JAMES C. DAVIS, as Agent and Director General of Railroads, Respondent.*

In the Kansas City Court of Appeals, January 21, 1924.

1. **APPEAL AND ERROR**: Rules: Rule Requiring Distinct and Separate Assignments of Error to be Made on Appeal Held Substantially Complied with. Where plaintiff appealing from an order dismissing its petition, in an assignment of error, stated that the judgment should have been that the petition stated a cause of action, and under its points and authorities points out that as the petition stated a cause of action, the judgment on demurrer should have been for plaintiff, rule 17 providing that the brief of appellant distinctly and separately allege the errors committed, is substantially complied with and the appeal will not be dismissed for failure to comply with the rules.

2. **MISJOINDER OF CAUSES OF ACTION**: Demurrer: Petition in Two Counts Containing a Misjoinder of Causes of Action, One, Sounding in Contract and the Other in Tort, Held Demurrable. Where one count of plaintiff's petition based its right of recovery from a carrier upon a contract of shipment, specifying that onions would be delivered in as good order as when received, and a second count charging specific acts of negligence, with a prayer, in each count asking for damages, *held* that petition contains a misjoinder of causes of action in that first count sounds in contract and the second in tort.

3. ———: Cause of Action Ex Contractu May not be Joined with Cause of Action Ex Delicto. A cause of action *ex contractu* may not be joined with a cause of action *ex delicto*.

4. **PROCESS** Service: Petition Must Predicate Liability Against Director General in Charge of Railroad against Whom Service Was Obtained. Where Director General in charge of one railroad is a different legal entity from the same individual in charge of another, a petition directed against said Director General in charge of three railroads, where the record shows that service was obtained only upon the agent of one, must predicate liability against the Director General in charge of the railroad against whom service was obtained.

215 Mo. App.—35.

5. ———: ———: Petition against Director General to Recover from Initial and Delivering Carrier Held Insufficient as Against Connecting Carrier Served with Process. In a suit against Director General of three railroads, to recover for loss sustained on a carload of onions, a petition alleging which was the initial carrier, but not stating which of the other two roads was the delivering carrier, failed to state any cause of action against Director General in charge of the railroad served with process, since it was not the initial carrier against whom the action was brought and it does not appear therefrom which road was the terminal or delivering carrier.

*Headnote 1. Appeal & Error, 3 C. J., Section 1589; 2. Actions, 1 C. J., Section 244; 3. Actions, 1 C. J., Section 244; 4. Railroads, 33 Cyc, p. 45; 5 Railroads, 33 Cyc, p. 45.

Appeal from Circuit Court of Jackson County.—*Hon. Thos. B. Buckner*, Judge.

AFFIRMED.

*Joseph P. Duffy* for appellant.

*Langworthy, Spencer & Terrell* and *H. J. Nelson*, of Counsel, for respondent.

ARNOLD, J.—This is a suit in damages to recover loss sustained on a carload of onions shipped from New York City on January 2, 1920, and diverted to Omaha, Nebr.

Plaintiff is a corporation engaged in the commission business with headquarters at Kansas City, Mo. Defendant was Director General of Railroads, designated by the President of the United States under the provisions of section 206 of the Transportation Act of 1920. The petition, filed January 17, 1922, in the circuit court of Jackson County, is in two counts. The first charges:

"That the railroads and systems of transportation over whose lines or routes and which during Federal Control were operated by and in charge of the director

general of railroads were as follows: Lehigh Valley Railroad Company, The New York, Chicago & St. Louis Railroad Company, and the Chicago, Burlington and Quincy Railroad Company, and at the time of the movement of this shipment the director general of railroads was a common carrier engaged in the carriage of freight for hire.

"That on or about January 2, 1920, plaintiffs caused to be delivered to the director general of railroads in charge of the Lehigh Valley Railroad Company at New York City, New York, one carload of onions for shipment. Said shipment was accepted and forwarded over the lines mentioned in paragraph two hereof, they being operated by the director general of railroads while under the Federal Control. . . . This shipment was afterwards diverted to Omaha, Nebraska, in accordance with published tariffs in effect and on file with the Interstate Commerce Commission, to which the director general of railroads was a party.

"That at the time of delivery of said shipment at shipping point and at time of issuing of the bill of lading shipment was in good, sound condition and it was the duty of the defendant to transport said shipment to destination in as good condition as when received by carrier at shipping point and said shipment was in fit condition to carry through to destination without deterioration, if it had received proper treatment at the hands of the carriers. That the shipment when it reached destination was not in good, sound condition, but on the contrary about five per cent of the stock showed sprouts two to five inches long and about ten per cent showed decay, affecting the center of the onions and there were a few completely decayed. There were also onions frozen. In fact nearly all of the onions were touched by frost and many of the onions were completely affected and some only slightly.

"That because of these premises and the condition of the shipment, when shipment reached destination as

aforesaid, and by reason thereof the damage was $475 and also plaintiff paid $75 for assorting the good onions from the bad, making in all the extent of damage $550.''

Further, it is stated claim was filed within ninety days after delivery, with the Chicago, Burlington & Quincy Railroad Company.

Count 2 of the petition charges specific acts of negligence, as follows: (1) Failure of the carrier to protect said shipment from freezing; (2) failure to furnish heat and failure to cover the onions at the time of loading and unloading at shipping point; (3) failure to transport the shipment within a reasonable time; (4) failure to furnish heat while the shipment was in transit; (5) failure to furnish proper ventilation and to close ventilators in cold weather; (6) negligently giving the shipment rough handling in the course of transit, causing some of the onions to become bruised.

A demurrer to plaintiff's petition was filed in due time, as follows:

''Separate Demurrer of James C. Davis, Agent Designated by the President under Transportation Act of 1920, to defend causes of action arising out of the operation of the Chicago, Burlington & Quincy Railroad Company during the period of Federal control.

(I.)

''Comes now the defendant, James C. Davis, agent designated by the President under Transportation Act of 1920, and separately demurs to the first count of plaintiff's petition, for the reason that said petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant.

(II.)

''Comes now the defendant, James C. Davis, agent designated by the President under the Transportation Act of 1920, and separately demurs to the second count of plaintiff's petition, for the reason that said petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant.''

Said demurrer was taken up and heard by the court on June 30, 1922, and judgment rendered as follows:

"Now on this day defendant's demurrer to plaintiff's petition is by this court sustained to which ruling of the court plaintiff refuses to further plead in this case, thereupon, the court dismisses plaintiff's petition. It is therefore ordered and adjudged by the court that the plaintiff's petition herein be and the same is hereby dismissed and that the defendant have and recover of and from plaintiff all costs herein incurred and that execution issue therefor, to which action and ruling of the court plaintiff excepts."

Whereupon plaintiff filed its motion to set aside the ruling of the court sustaining said demurrer. Said motion is as follows:

"Comes now the plaintiff and states to the court that at this term of court in the assignment division there was entered of record a judgment dismissing this suit.

"That the court was under the impression that a special demurrer had been filed against the petition when as a matter of fact a general demurrer was filed against the petition and the court therefore was under a wrong impression as to the nature of the pleadings which was passed upon and for this reason plaintiff asks that judgment heretofore entered be set aside."

This motion was overruled by the court in the following language:

"Now plaintiff's motion to set aside the order heretofore made herein dismissing this cause is by the court overruled, to which overruling and order of this court plaintiff excepts."

Following this ruling of the court plaintiff perfected his appeal. Four assignments of error are presented for our consideration, to-wit: (1) That the judgment and decision of the court are contrary to law, (2) that the decision should have been that the petition did state a cause of action; (3) the court should have overruled the demurrer and (4) the judgment and decision should have been for plaintiff.

First we are confronted with a motion to dismiss the appeal for alleged failure to comply with Rule 17, of this court. In support of this motion, it is urged that plaintiff is appealing from the order dismissing its petition; that appeal will lie only as to final orders in a case, and that the assignments of plaintiff fail to mention such error committed by the trial court herein.

Rule 17 of this court provides that the brief on behalf of appellant, or plaintiff in error, shall distinctly and separately allege the errors committed by the inferior court, and no reference will be permitted in the oral argument to errors not thus specified, nor any reference by either counsel to any authority not cited in his brief, unless for good cause shown the court shall otherwise direct. Rule 18 provides for dismissal of an appeal or writ of error for failure to comply with the provisions of Rules 14, 15, 17 and that part of Rule 16 relating to statements.

In the consideration of this motion, it is necessary to call attention to plaintiff's assignment of error numbered 2, wherein it is stated: ''The judgment and decision of the court should have been that the petition did state a cause of action.'' If plaintiff is right in this view, it necessarily follows that the trial court was in error in sustaining the demurrer.

Under points and authorities, plaintiff points out that as the petition states a cause of action the judgment on the demurrer should have been for plaintiff.

Our Rule 17 corresponds with Rule 15 of the Supreme Court. In Vahldick v. Vahldick, 264 Mo. 529, it is stated that although appellant in his brief makes no collective assignment of errors, if he separately assign error specifically in distinct sub-heads of points and authorities, this will be accepted on appeal as a substantial compliance with the statute requiring assignments.

Appellant herein has substantially complied with our Rule 17 in directing our attention to the errors of the trial court in his points and authorities, and we must.

rule against defendant's contention on this point, and overrule his motion to dismiss the appeal.

This brings us to a consideration of the only question, in our view of the case, requiring a solution under this appeal, to-wit: Does the petition state a cause of action against the defendant?

The demurrer charges that neither count of the petition states a cause of action against this defendant, and it is now urged by defendant that the said demurrer embraces the charge that the petition contains a misjoinder of causes of action, in this: That Count 1 sounds in contract, and Count 2 sounds in tort. We think the petition open to this objection. Count 1 bases plaintiff's right of recovery upon the contract of shipment, under the terms of a bill of lading issued, specifying that the merchandise would be delivered in as good order as when received. Count 2 charges specific acts of negligence, and there is a prayer in each count asking for damages.

The rule is that a cause of action *ex contractu* may not be joined with a cause *ex delicto*. [Ederlin v. Judge, 36 Mo. 350; Blackmer, etc., Co. v. Railway, 137 Mo. App. 133, 479; Grain Co. v. Hickey, 200 S. W. 438.] In the case last cited, this court held:

"We need not set forth the allegations in either count, since the face of the case is a concession that one is based on a cause of action *ex contractu* and the other a cause *ex delicto*. Plaintiff's position here, as well as in the trial court, is that since both counts, and the damages alleged in each, grew out of one transaction, and since it was entitled to but one judgment, the two could be joined in one petition under the terms of section 1795, Revised Statutes 1909. . . ." [Now section 1221, R. S. 1919.]

"It will be noted that while the first clause of that statute permits the joining of different causes of action which grow out of the same transaction or are connected with the same subject of action, and the second permits joining of all actions on contracts, express or implied,

the latter part of the section limits that right by declaring that the causes of action so united must belong to one class. That is to say, you may, under the first and second clauses, join in one petition any number of matters in contract which arise out of one transaction, and may also join any number of actions on contracts, express or implied; all, thus united in one petition, must be causes of action in contract. The statute quoted is not only not authority for joining in one petition different classes of actions, such as *ex contractu* and *ex delicto,* but it forbids such junction. Notwithstanding the adoption of the Code, the distinction between actions *ex contractu* and *ex delicto* still exists. They do not belong to the same class.

"We cite the following cases in which, though involving matters in one transaction, the decision is that actions *ex contractu* and *ex delicto* could not be joined in one petition. [Jamison v. Copher, 35 Mo. 483; Ederlin v. Judge, 36 Mo. 350; Southworth Co. v. Lamb, 82 Mo. 242, 247; Sumner v. Rogers, 90 Mo. 342, 2 S. W. 476, with New York cases cited therein; Fadley v. Smith, 23 Mo. App. 87; O'Riley v. Diss, 48 Mo. App. 62; Barnes v. Railroad, 119 Mo. App. 303, 306, 95 S. W. 971; Pipe Co. v. Railroad, 137 Mo. App. 479, 497, 119 S. W. 1.]"

It must be held that the petition herein flatly violates this rule. The remaining point is, as to whether this point was properly raised in defendant's demurrer.

It is clear from a reading of the record that the demurrer was accepted by the court and treated by the litigants as a special demurrer attacking the petition on account of misjoinder of causes. This view is indicated from the wording of plaintiff's motion to set aside the order of the court dismissing the petition. The record shows that it was from the ruling of the trial court on this point that defendant refused to plead further. The motion of plaintiff and the ruling of the court both show that this point was considered and that it was passed

upon by the trial court. The record further shows that it was not until two months after the ruling of the court on the demurrer that plaintiff raised the issue of the insufficiency of the demurrer to raise this point. The question was presented by counsel for defendant in his demurrer, it was argued by the parties, the court passed upon it, and apparently all were agreed as to the question of misjoinder of causes of action.

But we are of opinion that whether the demurrer was considered general or special as regards this point, the petition is fatally defective in another respect which, beyond question, is covered by the demurrer. The petition, on its face, shows that it is directed against James C. Davis as Director General in charge of three railroads, while the record shows that service was obtained only upon the agent of one, viz., the agent of the Burlington. Davis in charge of one railroad is a different legal entity from Davis in charge of another, or others. [Mo. Pac. R. R. Co. et al. v. Ault, 256 U. S. 554, et seq.] Therefore the petition must predicate liability against Davis in charge of the railroad against whom service is obtained, else it states no cause of action against Davis in charge of that railroad.

The petition, in both counts, alleges that the Lehigh Valley Railroad is the initial carrier, but nowhere does it state which of the other two roads is the delivering carrier. Hence it fails to state any cause of action against Davis in charge of the Burlington Railroad, since it appears from the petition that it was not the initial carrier against whom the action is attempted to be brought, and it does not appear what road was the terminal or delivering carrier.

This is also true of the second count which is based on negligence, or a cause of action *ex delicto*. Davis, as Director General in charge of the Burlington Railroad is the only Davis in court and against whom liability may be established in this case. For aught we can learn from

the language of the petition, all, or part of the negligence occurred on lines other than the one in court. We therefore hold that the demurrer was properly sustained, even though said demurrer may be regarded as general and not special.

The judgment is affirmed. All concur.