## TABOR v. UNIVERSAL EXPLORATION CO.
### No. 8739.

Circuit Court of Appeals, Eighth Circuit.

March 30, 1931.

Allen McReynolds, George J. Grayston, and Charles M. Grayston, all of Joplin, Mo., for appellant.

Haywood Scott and A. E. Spencer, both of Joplin, Mo., for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellee is a New Jersey corporation licensed to do business in the state of Missouri and engaged in mining operations at Joplin in said state. Some time prior to May 14, 1927, appellee was named as lessee in a mining lease covering the following described property:

"All of the Southeast Quarter (S. E. ¼) of the Northwest Quarter (N. W. ¼) of Section Fourteen (14) Township Twenty-nine (29) Range Thirty-four (34) containing Forty (40) acres more or less."

On the last-named date appellant and appellee entered into a contract whereby appellant agreed to buy all the right, title, and interest of appellee in and to said property above described, and also in and to a certain concentrating plant in said contract described, "including all buildings, scales, office, power-plant, pumps, and all mining and concentrating machinery in said plant, and in the underground workings of said mine, and all tools and other equipment and personal property belonging to and used in connection with said mill and mine, and now upon said land."

The consideration stated was a cash payment of $10,000, a second payment of $20,-000 on or before ninety days from date of contract, and thereafter additional payments at stated periods, making the entire purchase price, including the initial payment, total $75,000. Coincident with the execution of this instrument, appellee agreed to and did deposit in escrow with the Conqueror Trust Company of Joplin, Mo., a proper assignment of the lease in question and a proper bill of sale transferring the other property above described, to be delivered to appellant when the purchase price should be fully paid, and with instructions to the escrow agent to return said instruments to appellee as and when "appellant shall fail to pay any installment, together with interest thereon, where interest is provided to be paid, in accordance with the terms and provisions of this contract, and upon the date specified herein." This contract of May 14, 1927, contained the further explicit conditions:

"In the event the Party of the Second Part shall fail to make any payments provided herein, as, and when, due this contract shall thereupon terminate, and the Party of the Second Part shall immediately surrender the peaceable possession of said land lease, mine, buildings, machinery, tools, equipment and other property to the Party of the First Part, save and except ore then in the bin, and shall not be liable to the Party of the First Part for any of the unpaid installments, and the Party of the First Part may retain all payments theretofore made as liquidated damages for the failure of the Party of the Second Part to make said payments, as herein specified.

"The Party of the Second Part agrees that in the event he shall fail to carry out and perform any of the provisions of this agreement, as herein provided to be kept and performed by him, or shall fail to perform and carry out any of the terms and provisions of the mining lease above mentioned as therein specified, he will at the request of the Party of the First Part quit and surrender the peaceable possession of said land, mine, mill, buildings, tools, machinery and equipment, and also agrees that, if he shall elect not to continue the payments herein provided to be made by him he will immediately quit and surrender the peaceable possession of said land, mine, mill, buildings, tools and machinery and equipment to the Party of the First Part.

"Party of the Second Part agrees that, upon any such termination of this contract because of his election to quit and surrender same, or because of his violation of any of

the terms and provisions of this agreement, or of the lease above mentioned, he will return said mine, mill, buildings, machinery, tools and equipment to the Party of the First Part in the same condition he shall have received them, ordinary wear and tear alone excepted."

February 2, 1928, appellee made written demand upon appellant for all the property in his hands, possession of which had theretofore been delivered under the provisions of the contract of May 14, 1927, and upon the escrow agent for the return of the instruments deposited with it. The stated grounds for these demands were that appellant had failed to carry out and perform the provisions of said written contract, had failed to pay, as and when specified, the installments of the purchase price provided therein, had failed to perform and carry out the terms and provisions of the mining lease, "having elected not to continue the payments due said Universal Exploration Company as provided in said contract dated May 14, 1927, and thereby having relieved yourself of making any further payments due said Universal Exploration Company provided in said contract to be made by you." On the same day receipt of this demand was acknowledged by appellant in the following language:

"The undersigned acknowledges receipt of your demand for possession of the land and property therein described, to-wit: The Southeast Quarter of the Northwest Quarter of Section Fourteen, Township Twenty-nine, Range Thirty-four, in Jasper County, Missouri, including mine, mill, buildings, tools, machinery, and equipment also mentioned in said demand, dated February 2, 1928, and hereby surrenders possession of the said land and property demanded in accordance therewith; reserving the right to prosecute the pending suit or any other appropriate action to recover the amounts theretofore paid on the purchase price of said property and expenditures made thereon."

It appears from the record that, at the time this demand was made, and receipt thereof acknowledged, there was pending a suit by appellant against appellee "based upon charges of fraud in the inducement to the contract." That suit was filed November 14, 1927, and was dismissed without prejudice subsequently to February 2, 1928. The suit now on appeal was then filed, and upon demurrer the court held that the original petition stated a case in tort, and the demurrer was overruled. However, on June 17, 1929, appellant filed an amended petition, which is long and somewhat involved. It recites the assignment of this lease and the bill of sale from appellee to appellant, that appellee falsely and fraudulently, for the purpose of deceiving appellant and inducing him to purchase the said lease and other mining property, represented that the pay ore in said mine was not exhausted and that the falls, drifts, and underground workings in said mine showed, in place, ores of a percentage averaging above 4.03 percentage recovery; such ore being and appearing in all the drifts to such an extent and in such condition as to enable an operator profitably to resume operations upon the ore then in sight, and that drilling ahead of the workings showed the continuation of ore of as high a percentage and in such quantities that, after leaving sufficient pillars, ore could be profitably produced therefrom to the extent of not less than nine thousand tons of concentrates; that, if this had been true, the property would have been well worth the purchase price; that these representations were false and known so to be by appellee which had theretofore operated the mine, had cut and removed therefrom all the pay ore showing therein sufficient to justify further operations, and had abandoned the property, shut down the pumps, and allowed the underground workings to fill with water. The amended petition states that appellee, in furtherance of its wrongful purpose, refused to give appellant an option or opportunity to investigate the mining property after drainage, falsely represented that other prospective purchasers were willing and ready to take the property, and by these and other means induced appellant to close the transaction in reliance upon the representations made. Appellant states that he made the cash payment of $10,000, entered upon the property, and undertook to operate it, went to considerable expense in that behalf, and paid the second installment of $20,000 before he ascertained that the actual conditions of said mine were and are such that the same is not and was not reasonably worth any sum whatsoever, except as to the value of the tangible property, which will not exceed the sum of $10,000. He therefore elected to go no farther with the enterprise. There followed the demand, the acquiescence therein, and the return of the property in accordance with the terms of the contract as hereinabove set out. While pleading this situation in connected form, appellant states that, while his original suit was pending, he learned that the assignment of this lease to appellee's immediate predecessors in title was void because of

the failure of the Butte-Kansas Company, their grantor, to comply with the laws of Missouri governing the transaction of business in said state by foreign corporations; that for this reason this so-called mining lease was void, and that appellant acquired no title in it; that, if appellee had knowledge of this situation, it concealed the same, and, if it had no such knowledge, the contract was entered into by mutual mistake. The petition concludes with the following allegations respecting appellant's conceived grounds of recovery:

"Plaintiff further states that by reason of the fraud and misrepresentations aforesaid in the inducement to the plaintiff to enter into said contract, and the payment by the plaintiff to the defendant of the sum of Thirty Thousand Dollars ($30,000.00) prior to knowledge or information of such fraud and misrepresentations and the return and surrender of the said property and the acceptance thereof by the defendant, the defendant became and is obligated to return or refund to the plaintiff the said sum of ($30,-000.00) Thirty Thousand Dollars.

"Plaintiff further states that by reason of the invalidity and illegality of the said mining lease upon the facts hereinbefore stated, and the return and surrender of the said property to the defendant and its acceptance thereof, as hereinbefore stated, the defendant became obligated to return and refund to the plaintiff the said sum of Thirty Thousand Dollars ($30,000.00) so paid by the plaintiff to the defendant upon the purchase price of said property as aforesaid."

To this petition appellee interposed its demurrer upon several grounds, the following of which were sustained by the court:

"1. That the plaintiff has mingled, in his petition, alleged cause of action arising out of contract with an alleged cause of action arising out of tort.

"2. That plaintiff's said alleged causes of action ex contractu and his alleged cause of action ex delicto cannot be united in the same petition.

"3. That the different alleged causes of action attempted to be set up by plaintiff in his said petition do not belong to one class as required by law."

Appellant was given leave to file a second amended petition within ten days. He declined to plea further, and this appeal followed.

■■ Section 1221, Rev. St. Mo. 1919, is the authority upon which this ruling was based:

"*Causes of Action that May be United in the Petition.*—The plaintiff may unite in the same petition several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all arise out of: First, the same transaction or transactions connected with the same subject of action; or, second, contract, express or implied; or, third, injuries, with or without force, to person and property, or either; or, fourth, injuries to character; or, fifth, claims to recover real property, with or without damages for the withholding thereof, and the rents and profits of the same; or, sixth, claims to recover personal property, with or without damages, for the withholding thereof; or, seventh, claims by or against a party in some representative or fiduciary capacity, by virtue of a contract, or by operation of law. But the causes of action so united must all belong to one of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated, with the relief sought for each cause of action, in such manner that they may be intelligibly distinguished."

Under this statute the Missouri courts have consistently held that a cause of action ex contractu cannot be joined with one ex delicto. That statute "is not only not authority for joining in one petition different classes of actions, such as ex contractu and ex delicto, but it forbids such junction. Notwithstanding the adoption of the Code, the distinction between actions ex contractu and ex delicto still exists. They do not belong to the same class." Hodgson-Davis Grain Co. v. Hickey (Mo. App.) 200 S. W. 438, 439; Southworth Co. v. Lamb, 82 Mo. 242; Sumner v. Rogers, 90 Mo. 324, 2 S. W. 476; Johnson v. Brill et al. (Mo. Sup.) 295 S. W. 558; Peycke Bros. Com. Co. v. Davis, 215 Mo. App. 545, 257 S. W. 824; Hockley v. Hulet Bros. Storage & Moving Co. (Mo. App.) 16 S.W.(2d) 749.

The sole matter of inquiry, therefore, on this appeal is whether the amended petition mingles an alleged cause of action arising out of contract with one arising out of tort, as held by the trial court. The rules governing the determination of this crucial question are so well stated by Corpus Juris, as gleaned from the very great number cited of decisions rendered throughout the United States in federal and state jurisdictions, that we find it of advantage at the outset to quote liberally:

"The test of whether more than one cause of action is stated in a complaint is whether

there is more than one distinct primary right or subject of controversy presented for enforcement or adjudication, and not whether there are different kinds of relief prayed or objects sought. In applying this test it is to be observed that, without giving rise to more than one cause of action, plaintiff's primary right and defendant's infringement thereof, which taken together constitute the cause of action, may each be very complicated, and may involve a number of subordinate rights or incidental matters. In determining this question regard should be had to the substance rather than to the form of the complaint, for a complaint may in fact state different causes of action, although they are stated in the form of one, or it may state but one cause of action, although it is stated in the form of several. In doubtful cases it may be proper to consider the form of the complaint, or the relief demanded or object sought, but neither is controlling. Nor will the actual intention of the pleader control, for the complaint may state several causes of action, although it was intended to state but one; and conversely, if the facts alleged constitute but one cause of action, it is not material that plaintiff may have intended to state more than one, or has in express terms alleged that he has done so.

"In accordance with the principles above stated, if the facts alleged in a declaration, complaint, or petition show but one distinct primary right on the part of plaintiff, and one delict or wrong on the part of defendant involving that right, there is but one cause of action stated. This is true, although incidental matters are alleged in connection with the primary right, which render other parties than the main defendant proper or necessary to the litigation, or although facts are stated which, while germane to the primary purpose of the action, might constitute independent grounds of relief; and where a single transaction is relied on, the complaint does not necessarily state two causes of action, because the facts alleged may show a liability both in contract and in tort. It is not necessary that the wrong shall consist of a single act, or that the resulting injuries consist of but a single element; and the amount sought to be recovered may be made up of several items. The complaint may, without stating more than one cause of action, set forth different grounds or theories upon which plaintiff is entitled to the same relief, or may set forth different means or methods employed in accomplishing the same wrong." 1 C. J. §§ 190 and 191, pp. 1055, 1056, 1057.

Applying the test thus defined, we are persuaded that the amended petition states but a single cause of action or primary right, although by way of inducement a number of subordinate rights, or incidental matters, are involved, and described with such completeness that some or all of them might be regarded as stating a cause or causes of action, if such were the primary object of the litigation. To arrive at this we take the petition as a whole—the charging part and the prayer for relief. So considered, we find a significant departure from the ordinary elements of a tort action. In such the relief sought is for damages suffered. In this petition it is alleged that appellant paid out $30,000 by way of payments, and suffered a development loss of $6,540.63 before the alleged fraud was discovered. But it does not pray damages in these amounts, nor at all. It asks the return of the $30,000 paid as for money had and received. It asks repayment of the same amount because of alleged failure of title and consideration. Both of these grounds of recovery sound in contract. Each is an additional ground for the same single recovery sought. Both, if sustained by the proofs, would furnish foundation for rescission, and, upon rescission, recovery of the payments made would follow as a necessary incident. In fact, appellant treats this action substantially as one for rescission, because of the cancellation of the contract and lease and the return of the properties to appellee—in effect the same as would have followed a decree of rescission. This action, however, is not one to rescind. The petition does not so declare. The return of the property was made under the terms of the contract for lease, and, if that contract governed, appellant would be without remedy, because, upon failure to pay as stipulated, and abandonment of the enterprise, all prior payments were to be forfeited as liquidated damages. But, before the demand was made by appellee, and before the properties were returned pursuant thereto, appellant had filed, and there was then pending, a suit to recover the amounts theretofore paid on the purchase price of the said property. In returning that property as demanded, appellant reserved the right to prosecute the pending suit or any other appropriate action. We have no knowledge of the form of the then pending action, which was dismissed without prejudice, nor of the original petition in the cause before us. The record is silent as to both, and we are confined to a consideration of the amended petition.

■ If appellant had sued to rescind the contract with appellee, and to cancel the lease upon the grounds stated in this action, and had sustained his allegations of fraud and failure of title, it cannot be doubted that he could have recovered the purchase money paid. Now, that the properties have been restored to appellee, as they would have been if the contract had been formally rescinded, is there any legal reason why appellant may not have the relief prayed if he pleads and proves the same state of facts which would have entitled him to a decree of rescission? In such case, the law will imply a promise on the part of the wrongdoer to reimburse the party injured by his act.

■ "Statement in the petition of a tort involved in the cause of action will not nullify right to action for money had and received." Walton et al. v. Chalmers (Mo. App.) 205 S. W. 90.

It is true that, in the action for money had and received, such a recitation of the wrong suffered may be omitted, but that recitation, if sustained by the proofs, would make it clear that appellee has received and retains money which in good conscience belongs to appellant, and that is the gist of the action. This view of the law is sustained by abundant decision: Byxbie et al. v. Wood, 24 N. Y. 607; Crigler v. Duncan, 121 Mo. App. 381, 99 S. W. 61; Brewer v. Dyer, 7 Cush. (Mass.) 337; Lipman, Wolfe & Co. v. Phœnix Assurance Co. (C. C. A. 9) 258 F. 544; Board of Commissioners of Kay County v. Pollard-Campbell Dredging Co. (C. C. A. 8) 251 F. 249.

In Sanford v. First National Bank (C. C. A.) 238 F. 298, 301, Judge Amidon, speaking for this court, quotes from the opinion of Chief Justice Mansfield in Moses v. Macferlan, 2 Burrow, 1005, as follows:

"It [the action for money had and received] lies for money paid by mistake, or upon a consideration which happens to fail or for money got through imposition (express or implied) or extortion, or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances."

■ The tort, arising from the fraud alleged to have been committed, may be waived and recovery had in an action ex contractu.

"Even where there is no express contract, and the cause of action arises out of tort, the tort may be waived and an action of contract brought in all cases where the law will imply

a promise on the part of the wrongdoer to reimburse the party injured by his act." 1 C. J. par. 158, pp. 1031 and 1032.

In such case assumpsit lies for money had and received. Wood on Limitations (4th Ed.) vol. 1, par. 21, p. 95; Burgoyne v. McKillip (C. C. A. 8) 182 F. 452; Eastwick v. Hugg, 1 Dall. 222, 1 L. Ed. 109; D'Utricht v. Melchor, 1 Dall. 428, 1 L. Ed. 208; Fenemore v. United States, 3 Dall. 357, 1 L. Ed. 634; Chesapeake & Ohio Canal Co. v. Knapp, 9 Pet. 541, 565, 9 L. Ed. 222; United States v. State Nat. Bank, 96 U. S. 30, 35, 24 L. Ed. 647; Louisiana v. Wood, 102 U. S. 294, 298, 26 L. Ed. 153; Ankeny v. Clark, 148 U. S. 345, 13 S. Ct. 617, 37 L. Ed. 475; Lipman, Wolfe & Co. v. Phœnix Assurance Co. (C. C. A. 9) 258 F. 544.

We do not wish to be understood as expressing or intimating any opinion upon the merits of this controversy. We think, for the reasons stated, that in the amended petition there was no misjoinder nor improper commingling of causes of action in violation of the Missouri practice act, and therefore that the demurrer was improperly sustained upon that ground. The judgment below is accordingly reversed, and the case remanded for further proceedings in harmony with the views herein expressed. It is so ordered.